*In re* ESTATE OF FRED J. RUPP, Incompetent.—(PIONEER TRUST & SAVINGS BANK, Conservator, Petitioner-Appellant, *v.* ELIZABETH REGAN, Respondent-Appellee.)

(No. 55266;

First District—March 20, 1972.

Equi, Farwell, Rickelman & Proteau, of Oak Park, (William F. Rickelman, of counsel,) for appellant.

Lapping, Niederman & Facktor, of Chicago, (Jerrold M. Facktor, of counsel,) for appellee.

Mr. JUSTICE BURKE delivered the opinion of the court:

This is an appeal from a judgment dismissing the petitioner's citation to recover property. The following appears from the record.

On April 8, 1969, Fred J. Rupp, age 79, was adjudicated incompetent. The Pioneer Trust & Savings Bank was appointed conservator of his estate and Robert F. Rupp conservator of his person. On May 23, 1969, the bank filed its Petition to recover property from Elizabeth Regan, the respondent and appellee. The petition charges that Mrs. Regan is possessed of certain properties belonging to the petitioner as conservator which she wrongfully refuses to return. In her answer, respondent admitted the allegations but affirmatively alleged that the properties enumerated in the petition were given to her as gifts by Mr. Rupp prior to his becoming incompetent. The court found that there was no evidence to support the claim of a valid gift. The court ruled however, that Rupp was competent at the time of the transfers and that because the evidence failed to establish the existence of a fiduciary relationship between the parties, the question of Rupp's donative intent was irrelevant, the transfers having created valid joint tenancies. In her brief the respondent has conceded that the transfers did not constitute valid gifts. She contends however that the judgment should be affirmed because the transfers created valid joint tenancies. We do not agree.

At the hearing Dr. Leslie W. Krieger testified that he was Mr. Rupp's personal physician and that on the 3rd of January 1969, the respondent brought Rupp to the Belmont Hospital to be treated for injuries which he sustained as the result of an alleged fall. It was this doctor's opinion that Rupp was not competent at that time.

Mrs. Josephine Martinez testified that she had been Rupp's upstairs tenant for about five years and that in December of 1968, she observed the respondent and her family move into Rupp's apartment. When the respondent returned from taking Rupp to the hospital on the 3rd of January, she told Mrs. Martinez that she would have to move due to the fact that respondent owned the building. In addition, Mrs. Martinez stated that she visited Rupp quite frequently prior to that time and that

Rupp had never mentioned anything to her about making gifts to the respondent. According to this witness, Rupp was a stingy man and had instructed her to call his attorney if anything should happen to him.

Donald Hennessey, Mr. Rupp's personal attorney, stated that in January of 1969, the respondent advised him of the fact that Rupp had requested her to handle his affairs. This witness further stated that Rupp confirmed this fact but denied giving the respondent any interest in his properties.

The respondent was called to testify as an adverse witness pursuant to Section 60 of the Civil Practice Act. (Ill. Rev. Stat. 1969, ch. 110, par. 60.) She stated that in late December of 1968, she took Rupp to see Mr. James Touhy, an attorney at law and also her cousin. According to the respondent, although she knew that Rupp had his own attorney, it was Mr. Touhy who drafted the deeds which purported to place Rupp's realty in joint tenancy with her.

On December 30, 1968, respondent accompanied Rupp to the Pioneer Trust & Savings Bank to have her name placed on his safety deposit box. The next day she again took Rupp to that bank to have her name added to his name on his stock certificates and United States Savings Bonds. She also accompanied Rupp to the Bell Savings & Loan Association for the purpose of adding her name to his savings accounts, which was done. The respondent testified that Rupp had stated that he was making the transfers in order to facilitate the managing of his affairs. According to this witness, on January 1, 1969, she collected the rent from Rupp's tenant, cashed the check and returned the proceeds to Rupp.

Mrs. Elizabeth Zoellmer, Rupp's part-time housekeeper, stated that in late December 1968, the respondent advised her that her services would no longer be required. According to this witness, the respondent stated that she was going to take care of Mr. Rupp. Mrs. Zoellmer also testified that Rupp was not a generous man.

The record indicates that between the 1st and 13th of January 1969, the respondent withdrew from one of the Bell Savings Accounts $70,-000.00, thereby leaving in that account a balance of approximately $90.00. Shortly after the incompetency adjudication, respondent cashed in the U.S. Savings Bonds for an amount in excess of $27,000.00. The record further indicates that prior to the date of the transfers (which constitute the subject of this suit), Rupp's estate had a value of approximately $160,000. According to Mr. Robert Ingram, an executive of the conservator bank, the present value of that estate, without considering the value of the property and choses in action which are the subject matter of this litigation, is $2,928.65.

■■ The issue of whether a valid joint tenancy was created is dependent upon the intent of the parties at the time of its alleged creation. As stated in *Bolton v. Bolton*, 306 Ill. 473, 483, and quoted in *In re Estate of Schneider*, 6 Ill.2d 180, 187: "There must be an intent to do so by the party creating the condition." In the *Schneider* case the court at 6 Ill.2d 180, 184 stated:

"In such cases generally, as in this case, it is not seriously suggested that there was any consideration for the transfer of an interest in the funds from the original owner * * *."

The court went on to say that, "If any interest in the funds was transferred, the transfer must have been by gift * * *." The court held that a deposit agreement manifests a donative intent on the part of the depositor. The court further held that this does not preclude the introduction of evidence tending to establish a contrary intent. Instruments which purport to create joint tenancies presumably speak the whole truth and those who claim adversely thereto must, in order to prevail, prove by clear and convincing evidence that a gift was not intended. *Murgic v. Granite City Trust & Savings Bank*, 31 Ill.2d 587.

■■ In determining the intent of the parties, the courts may take into consideration conversations, circumstances and events occurring after the act allegedly creating the joint tenancy. (See *Dixon National Bank v. Morris*, 33 Ill.2d 156; *In re Estate of Dawson*, 103 Ill.App.2d 362.) Another factor which may be taken into consideration is the quantity of property involved, for as this court stated in *Koziol v. Harris*, 82 Ill. App.2d 472, at 477: "It is unreasonable to presume a gift * * * where the subject consists of the entire estate of the alleged donor."

Applying the above principles to the case at bar, we believe that the court erred in dismissing the Petition to Recover Property. We agree, as the trial judge found and as the respondent has pointed out, that Rupp did not intend to make gifts. We do not agree that the transfers were intended to create valid joint tenancies.

■■ Our examination of the record discloses no evidence (other than the fact of the transfers) which would tend to indicate a donative intent and therefore an intent to create joint tenancies. It is our opinion that the evidence convincingly supports the conclusion that Rupp intended to allow the respondent to manage his affairs for his convenience. (See *Dixon National Bank v. Morris*, 33 Ill.2d 156.) In addition to Rupp's statement of Donald Hennessey denying the existence of any gifts to the respondent, and to other evidence tending to rebut the presumption of a donative intent, the respondent stated that it was Rupp's intention in making the transfers, to have her handle his affairs.

■■ The judgment order found that there was no evidence to sup-

port the claim of a fiduciary relationship between the parties. We cannot accept this finding. The evidence clearly supports the conclusion that Rupp, in requesting the respondent to manage his affairs, placed great confidence in her. As a result, the respondent accepted Rupp's property as a fiduciary with an obligation arising out of that confidence, to faithfully manage and use that property only in a manner consistent with the purpose for which the transfers were executed. (*In re Estate of Roth v. Roth*, 96 Ill.App.2d 292.) In situations where a fiduciary transcends that confidence by using the subject property for his or her own benefit, a constructive trust will arise by operation of law. (*Mortell v. Beckman*, 16 Ill.2d 209, 212-213; *Anderson v. Lybeck*, 15 Ill.2d 227.) In the instant case, the respondent accepted the transfers for the purpose of managing Rupp's affairs. The activities of the respondent in treating the subject property as her own constituted a breach of her fiduciary duty. The personal property as well as the realty must therefore be impressed with a constructive trust for the benefit of Rupp and his estate.

For the reasons stated the judgment (excluding paragraph four thereof which restrains the respondent from disposing of the assets) is reversed and the cause remanded for further proceedings not inconsistent with this opinion.

Judgment reversed and cause remanded with directions.

GOLDBERG, P. J., and LYONS, J., concur.