In re BAKE–LINE GROUP, LLC., et al., Debtors.

Montague S. Claybrook, Chapter 7 Trustee for Bake–Line Group, LLC, et al., Plaintiff,

v.

Consolidated Foods, Inc., Defendant.

Bankruptcy No. 04–10104 (MFW).
Adversary No. 06–50322(PJW).

United States Bankruptcy Court, D. Delaware.

Feb. 5, 2007.

Jeffrey S. Wisler, Marc J. Phillips, Connolly Bove Lodge & Hutz LLP, Wilmington, DE, Scott N. Schreiber, Stahl Cowen Crowley LLC, Chicago, IL, for Consolidated Foods, Inc.

Michael R. Lastowski, Christopher M. Winter, Duane Morris LLP, Wilmington, DE, for Montague S. Claybrook.

## MEMORANDUM OPINION

PETER J. WALSH, Bankruptcy Judge.

Montague S. Claybrook's ("Plaintiff"), the Chapter 7 trustee for Bake–Line Group, LLC ("Debtor"), brings this preference action against Consolidated Foods, Inc. ("Defendant") to avoid a pre-petition transfer of $139,208.24 from the Debtor to Defendant. This opinion is with respect to Defendant's motion for summary judgment (Doc. # 23) and Plaintiff's cross-motion for summary judgment (Doc. # 26). I find in favor of Defendant.

## BACKGROUND

Defendant and the Debtor are unrelated entities and had no business relationship. Their only connection was that they had offices in the same building in suburban Chicago. (Adv.Doc. # 24, p. 2.) Unilever Bestfoods ("Unilever"), one of Defendant's customers, mailed Defendant a check for $139,208.24 dated November 25, 2003. The payee on the check was Defendant, i.e., "Consolidated Foods, Inc." Apparently by mistake, the postman delivered the check to Debtor's office. (*Id.* at pp. 2–3.) The Debtor had no business relationship with Unilever. Nevertheless, the Debtor deposited the check into its bank account.[1] (*Id.* at p. 3.) Defendant intimates that the Debtor's actions were intentional by referring to the funds at issue as "stolen property," and "ill-gotten gains," and by alluding to the Debtor as a "thief." (Adv. Doc. # 29 pp. 1, 2, 3.) Plaintiff claims that " 'there is no evidence of theft' in this case." (Adv.Doc. # 30, p. 6.) However, neither Plaintiff nor Defendant present any evidence to show that the Debtor's deposit of Defendant's check was either intentional or a mistake.

Defendant later discovered that the Debtor had deposited the check from Unilever after contacting Unilever to inquire about the payment. (Adv.Doc. # 24, p. 3.) Defendant then contacted the Debtor to request return of the funds. (*Id.*) The Debtor, acknowledging that it was not entitled to the funds, transferred $139,208.24 to Defendant by check on or about January 8, 2004. (Adv.Doc. # 25, p. 2.) On January 12, 2004, the Debtor filed a petition for bankruptcy under Chapter 7 of the Bankruptcy Code.[2] (Adv.Doc. # 26, p. 1.) On January 12, 2006, Plaintiff filed the

1. Though the parties do not address the issue, the Court assumes that the check was successfully deposited into the Debtor's bank account as a result of the bank's failure to note that the payee on the check was not the Debtor.

2. Individual sections of the Bankruptcy Code will be cited herein as "§ ___."

instant action against Defendant to recover the money as a preferential transfer under § 547(b) or as a fraudulent conveyance under § 548 and § 544(b). By stipulation, the fraudulent conveyance count was later dismissed with prejudice (Doc. # 36).

## DISCUSSION

### Standard for Summary Judgment

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). In deciding motions for summary judgment, a court must view all facts in the light most favorable to the non-moving party. *Morton Int'l, Inc. v. A.E. Staley Mfg. Co.*, 343 F.3d 669, 680 (3d Cir.2003). The essential facts involved here are not in dispute, but the applicable law is.

### Preference

Plaintiff claims that in remitting the $139,208.24 to Defendant, the Debtor committed an avoidable preference under § 547(b). In order to show that the payment constituted a preference, Plaintiff must show that the transfer was of an interest of the debtor in property-

(1) to or for the benefit of a creditor;

(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;

(3) made while the debtor was insolvent;

(4) made—

(A) on or within 90 days before the date of the filing of the petition; or

(B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and

(5) that enables such creditor to receive more than such creditor would receive if—

(A) the case were a case under chapter 7 of this title;

(B) the transfer had not been made; and

(C) such creditor received payment of such debt to the extent provided by the provisions of this title.

§ 547(b).

Plaintiff's efforts to show that the Debtor's payment to Defendant was a preference as contemplated by § 547(b) fail in three respects: (1) the Debtor's transfer to Defendant was not a transfer "of an interest of the debtor in property" as required by § 547(b) because the Debtor never had any interest in the money; (2) the transfer was not "of an interest of the debtor in property" because while the money was in the Debtor's bank account, the Debtor was only holding the money in constructive trust for Defendant; and (3) Defendant was not a "creditor" as contemplated under § 547(b)(1).

### The Debtor Never Had an Interest in Defendant's Money

 Defendant argues that the Debtor's transfer to Defendant was not a transfer "of an interest of the debtor in property." The Bankruptcy Code does not define what "interest" or "property" means in the context of § 547(b). However, in *Begier v. IRS*, 496 U.S. 53, 65, 110 S.Ct. 2258, 110 L.Ed.2d 46 (1990), the U.S. Supreme Court clearly articulated the test to be applied in a § 547(b) action:

This [§ 547(b)] mechanism prevents the debtor from favoring one creditor over others by transferring property shortly before filing for bankruptcy. Of course, if the debtor transfers property that would not have been available for distri-

bution to his creditors in a bankruptcy proceeding, the policy behind the avoidance power is not implicated.

\* \* \* \* \* \*

"[P]roperty of the debtor" subject to the preferential transfer provision is best understood as that property that would have been part of the estate had it not been transferred before the commencement of bankruptcy proceedings.

496 U.S. at 58, 110 S.Ct. 2258.

■■■■ *See also Mitsui Mfrs. Bank v. Unicom Computer Corp. (In re Unicom Computer Corp.),* 13 F.3d 321, 324 (9th Cir.1994). To determine whether the money at issue in this case would have entered the Debtor's bankruptcy estate if the Debtor had never transferred it, we must look to § 541, which states that a debtor's bankruptcy estate is comprised of "all legal or equitable interest of the debtor in property as of the commencement of the case." § 541(a)(1). A debtor may not increase its rights to property through the filing of a bankruptcy petition. 5 *Collier on Bankruptcy* § 541.04 (15th ed.2006) ("[541(a)(1) ] is not intended to expand the debtor's rights against others beyond what rights existed at the commencement of the case. . . . The trustee can assert no greater rights than the debtor had on the date the case was commenced."). To determine whether the Debtor had a legal or equitable interest in the money, we must look to state law. *Butner v. United States,* 440 U.S. 48, 55, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979) ("Property interests are created and defined by state law. Unless some federal interest requires a different result, there is no reason why such interests should be analyzed differently simply because an in-

terested party is involved in a bankruptcy proceeding.").

■■ Under Illinois law,[3] a party cannot obtain an ownership interest in property through theft or conversion. *See Scholes v. Lehmann,* 56 F.3d 750, 759 (7th Cir. 1995) ("A theft cannot pass good title."); *People ex rel. Russell v. Michigan Ave. Trust Co.,* 233 Ill.App. 428, 430 (1924) ("[T]he owner of property cannot be devested of his title thereto without his consent."). Several courts have found that when a debtor has only "bald possession" of assets at the time of filing and no legal or equitable interest, those assets do not enter the bankruptcy estate. *In re Sielaff,* 164 B.R. 560, 567 n. 7 (Bankr.W.D.Mich. 1994); *In re Printup,* 264 B.R. 169, 174 (Bankr.E.D.Tenn.2001); *In re Dynamic Technologies Corp.,* 106 B.R. 994, 1005 (Bankr.D.Minn.1989).

It seems clear to me that whether the Debtor's cashing of the check was a theft or a mistake, the Debtor could not claim an ownership interest, either legal or equitable. If the transfer had not been made prior to the petition date, the Debtor would be holding funds in the amount of $139,208.24 wrongfully withheld from the entity (Defendant) with undisputed legal and equitable rights. Since the Debtor had no legal or equitable interest in those funds, they could not be estate property available for distribution to the estate's creditors. Indeed, the fact that the Debtor, upon being advised of the wrongful transaction, immediately returned the funds to Defendant indicates that the Debtor understood that it had neither a legal nor an equitable interest in the money. Without any interest in the money, it could have never entered the bankruptcy estate, and therefore Plaintiff

---

**3.** Defendant asserts that Illinois law applies in this case and Plaintiff does not assert other- wise. (Adv. Doc. # 26, p. 8 n. 3.)

cannot regain the money through a preference action. The Court of Appeals for the Seventh Circuit discussed an analogous hypothetical situation in *Belisle v. Plunkett:*

> If the debtor possesses a stolen diamond ring, the real owner's rights would trump those of a judgment creditor, and under the Code therefore would defeat the claims of all of the debtor's creditors. Whether or not we say that the debtor holds the ring in "constructive trust" for the owner is a detail. Under state law the owner's claims are paramount; the debtor could not defeat those rights by pledging or selling the ring, and the creditors in bankruptcy receive only what state law allows them.

877 F.2d 512, 515 (7th Cir.1989) *cert. denied sub nom. Belisle v. Anzivino,* 493 U.S. 893, 110 S.Ct. 241, 107 L.Ed.2d 191 (1989).

■ I do not believe that Congress wrote § 547(b) intending to treat parties that have had their property stolen or converted by the debtor as equals with creditors who willingly lent money to the debtor or otherwise engaged in business transactions with the debtor. Rather, Congress intended § 547 to ensure equal distribution among similarly situated creditors. *See* 5 *Collier on Bankruptcy* § 547.01 ("[T]he preference provisions facilitate the prime bankruptcy policy of equality of distribution among creditors of the debtor. Any creditor that received a greater payment than others of its class is required to disgorge so that all may share equally.").

*The Debtor Held the Money for Defendant in a Constructive Trust*

■ Defendant argues the Debtor's transfer to Defendant was not a transfer of an interest in property because while the money was in the Debtor's bank account, the Debtor was merely holding the property in a constructive trust for Defendant. The determination of whether a constructive trust applies is a question of state law. *In re Howard's Appliance Corp.,* 874 F.2d 88, 93 (2d Cir.1989). Under Illinois law, constructive trusts serve as a remedy when a party has conferred a benefit upon another party because of a mistake, thereby unjustly enriching the other party:

> 'A person who has conferred a benefit upon another because of a mistake, whether or not the mistake was induced by fraud or misrepresentation, is entitled to restitution only if the mistake caused the conferring of the benefit.'

*Martin v. Heinold Commodities,* 163 Ill.2d 33, 205 Ill.Dec. 443, 643 N.E.2d 734, 745 (1994) (quoting Restatement of Restitution § 9 (1937)). "[A] constructive trust is imposed to prevent unjust enrichment by imposing a duty on the person receiving the benefit to convey the property back to the person from which it was received." *Id.; see also Suttles v. Vogel,* 126 Ill.2d 186, 127 Ill.Dec. 819, 533 N.E.2d 901, 904 (1988) ("The sole duty of the constructive trustee is to transfer title and possession of the wrongfully acquired property to the beneficiary").

Defendant argues that because the Debtor only held the money in constructive trust before transferring it to Defendant, the money would not have entered the Debtor's estate if the transfer had not taken place. Section 541(d) provides,

> Property in which the debtor holds, as of the commencement of the case, only legal title and not an equitable interest ... becomes property of the estate ... only to the extent of the debtor's legal title to such property, but not to the extent of any equitable interest in such property that the debtor does not hold.

The Third Circuit has held that this section serves to exclude from the debtor's

bankruptcy estate any of the debtor's property held in constructive trust for another party at the time of a bankruptcy filing. *Official Comm. of Unsecured Creditors of Columbia Gas Transmission Corp. v. Columbia Gas Sys. (In re Columbia Gas Sys., Inc.)*, 997 F.2d 1039, 1059 (3d. Cir. 1993) *cert. denied* 510 U.S. 1110, 114 S.Ct. 1050, 1051, 127 L.Ed.2d 372 (1994); *see also Kamand Constr., Inc. v. Prop. Mgmt. (In re Kamand Constr., Inc.)*, 298 B.R. 251, 254 (Bankr.M.D.Pa.2003). In this regard § 541(d) treats constructive trusts the same as express trusts. *In re Unicom Computer Corp.*, 13 F.3d at 324–25; *In re Howard's Appliance Corp.*, 874 F.2d at 93; *Vineyard v. McKenzie (In re Quality Holstein Leasing)*, 752 F.2d 1009, 1012 (5th Cir.1985).[4]

If the Debtor held the money in constructive trust for Defendant during the time that it was in the Debtor's bank account, then the money would not have entered the Debtor's estate had the Debtor never returned the money to Defendant. Therefore, if a constructive trust existed, then, as noted above, the Debtor never had an interest in the property sufficient to support a preference claim under § 547(b). *Cf. Begier*, 496 U.S. at 58, 110 S.Ct. 2258. The issue that this Court must resolve then is whether a constructive trust was created, and if so, when?

Plaintiff argues that, under Illinois law, a constructive trust does not exist until a court makes a judicial pronouncement of its existence. As Defendant never obtained a ruling of a court stating that the Debtor held Defendant's money in a constructive trust, Plaintiff argues that no constructive trust was ever created.

There is contradicting case law concerning the timing of the creation of constructive trusts under Illinois law. There are several cases that state that a constructive trust arises at the moment that circumstances arise that would warrant the imposition of a constructive trust.[5] The most

4. Some courts have questioned whether courts should treat constructive trusts and express trusts equally under § 541(d) given that constructive trusts are merely remedies for unjust enrichment. *See, e.g., Berger, Shapiro & Davis, P.A. v. Haeling (In re Foos)*, 183 B.R. 149, 159 (Bankr.N.D.Ill.1995); *XL/Datacomp v. Wilson (In re Omegas Group)*, 16 F.3d 1443 (6th Cir.1994). In *Foos* the bankruptcy court held that because a constructive trust is "a remedy for unjust enrichment, not a real trust," which gives the " 'beneficiary' " no "equitable, or any other, interest in the property," § 541 does not serve to keep property held in a constructive trust out of the bankruptcy estate. 183 B.R. at 154. However, this interpretation appears to be contrary to Congress' intent in enacting 541(d), as evidenced by the legislative history, which states:

Situations occasionally arise where property ostensibly belonging to the debtor will actually not be property of the debtor, but will be held in trust for another. For example, if the debtor has incurred medical bills that were covered by insurance, and the insurance company had sent the payment of the bills to the debtor before the debtor had paid the bill for which the payment was reimbursement, the payment would actually be held in constructive trust for the person to whom the bill was owed.

H.R.Rep. No. 95–595, 95th Cong, 1st Sess. 368 (1977); S.Rep. No. 989, 95th Cong.2d Sess. 82 (1978), reprinted in 1978 U.S.C.C.A.N. 5963, 5787, 5868, 6324. The foregoing hypothetical evidences that Congress intended § 541(d) to exclude property from the bankruptcy estate where the debtor has the property in its possession, but lacks control or ownership. *City of Springfield v. Ostrander (In re LAN Tamers, Inc.)*, 329 F.3d 204, 210 (1st Cir.2003), *cert. denied*, 540 U.S. 1047, 124 S.Ct. 808, 157 L.Ed.2d 695 (2003).

5. *Compton v. Compton*, 414 Ill. 149, 111 N.E.2d 109, 113 (1953) ("A constructive trust arises when the legal title to money or property is obtained by a person in violation, express or implied, of some duty owing to him who is equitably entitled thereto."); *Cohon v. Oscar L. Paris Co.*, 17 Ill.App.2d 21, 149 N.E.2d 472, 476 (1958) ("Where a person holding title to property is subject to an equitable duty to

prominent of these cases is *Stansbury v. United States*, in which the District Court ruled that "a constructive trust arises at the time of the wrong." 543 F.Supp. 154, 157 (N.D.Ill.1982), *aff'd*, 735 F.2d 1367 (7th Cir.1984). *Stansbury*, and all of the cases that similarly hold that a constructive trust arises as soon as there are grounds to impose one, are all at least 25 years old, with the exception of *Martin v. Heinold Commodities*, 205 Ill.Dec. 443, 643 N.E.2d at 745. More recent case law states that a constructive trust does not arise until a court makes a judicial pronouncement of its existence.[6] These cases are typified by

the ruling of the Illinois Supreme Court in *Suttles v. Vogel*, in which the court stated that a constructive trust is not created until "a court declares the party in possession of wrongfully acquired property as the constructive trustee of that property." 127 Ill.Dec. 819, 533 N.E.2d at 904. There is also a group of cases that ambiguously state that a constructive trust "arises only when that fraud is proved or when advantage is taken of a fiduciary relationship by the dominant party."[7]

Confusingly, though the *Suttles* cases clearly contradict and post-date the *Stansbury* cases, none of the *Suttles* cases ex-

convey it to another on the ground that he would be unjustly enriched if he were permitted to retain it, a constructive trust arises.") (quoting Restatement of Restitution § 160 (1937)); *Mortell v. Beckman*, 16 Ill.2d 209, 157 N.E.2d 63, 65 (1959) ("[W]here one occupies the fiduciary relation of agent for another, and thereby gains something for himself which in equity and good conscience he should not be permitted to keep, equity will raise a constructive trust and compel him either to turn it over to the equitable owner, or to otherwise execute the trust as the court may direct."); *In re Estate of Rupp*, 4 Ill. App.3d 648, 281 N.E.2d 717, 720 (1972) ("In situations where a fiduciary transcends that confidence by using the subject property for his or her own benefit, a constructive trust will arise by operation of law."); *Hagerty v. General Motors Corp.*, 14 Ill.App.3d 33, 302 N.E.2d 678 (1973) ("A constructive trust comes into being immediately upon the happening of the circumstances that give rise to the remedy of restitution."); *Perlman v. First Nat'l Bank*, 15 Ill.App.3d 784, 305 N.E.2d 236, 250 (1973) (same); *Stansbury v. United States*, 543 F.Supp. 154, 157 (N.D.Ill.1982), *aff'd*, 735 F.2d 1367 (7th Cir.1984) ("The law in Illinois is clear that a constructive trust arises at the time of the wrong."); *Martin*, 205 Ill.Dec. 443, 643 N.E.2d at 745 (quoting Restatement of Restitution § 160 (1937)).

6. *Suttles*, 127 Ill.Dec. 819, 533 N.E.2d at 904 ("A constructive trust is created when a court declares the party in possession of wrongfully acquired property as the constructive trustee of that property."); *Pottinger v. Pottinger*, 238

Ill.App.3d 908, 179 Ill.Dec. 116, 605 N.E.2d 1130, 1137 (1992); *Eldridge v. Eldridge*, 246 Ill.App.3d 883, 186 Ill.Dec. 818, 617 N.E.2d 57, 62 (1993); *Frederickson v. Blumenthal*, 271 Ill.App.3d 738, 208 Ill.Dec. 138, 648 N.E.2d 1060, 1061 (1995) (same); *Almar Communs. v. Telesphere Communs. (In re Telesphere Communs.)*, 205 B.R. 535, 545 (N.D.Ill. 1997) (same); *Dunham v. Kisak*, No: 98–CV–0338–PER, 1998 U.S. Dist. LEXIS 22660, at *16 (S.D. Ill.Dec. 16 1998) (same); *Smithberg v. Ill. Mun. Ret. Fund*, 192 Ill.2d 291, 248 Ill.Dec. 909, 735 N.E.2d 560, 566 (2000) (same); *Scholes v. Lehmann*, No. 90 C 3828, 1993 U.S. Dist. LEXIS 4234, at *20 (N.D.Ill. Mar.31, 1993) ("A court imposes a constructive trust when it finds that it would be inequitable for the party in possession of wrongfully obtained property to retain possession of the property."); *In re Foos*, 183 B.R. at 159 (citing the fact that a constructive trust "does not arise until a court decrees it" as an indication that a constructive trust is a remedy).

7. *Anderson v. Lybeck*, 15 Ill.2d 227, 154 N.E.2d 259, 262 (1958); *Perry v. Wyeth*, 25 Ill.2d 250, 184 N.E.2d 861, 863 (1962) (same); *Pucci v. Litwin*, 828 F.Supp. 1285, 1301 (N.D.Ill.1993) (same); *Bear Kaufman Realty v. Spec Dev.*, 268 Ill.App.3d 898, 206 Ill.Dec. 239, 645 N.E.2d 244, 250 (1994). The requirement that fraud be "proved" suggests that the party wishing to invoke a constructive trust must go before a court to create the trust. However, it is not clear from this statement whether judicial pronouncement is also required when a dominant party takes advantage of a fiduciary relationship.

plicitly overturn any of the *Stansbury* cases. In fact, none of the *Suttles* cases even recognize that there was ever any different law concerning the timing of the creation of constructive trusts in Illinois. Which line of cases, then, is appropriate to apply in this case?

This same precise issue was addressed in *In re DVI, Inc.*, 306 B.R. 496 (Bankr. D.Del.2004). In that case, Judge Walrath noted that the Illinois Supreme Court in *Stansbury* addressed the timing of the creation of a constructive trust as a necessary component of the ruling in that case. In *Stansbury* the court was asked to determine when a constructive trust was created over a decedent's property in order to determine whether the decedent's estate was liable for taxes on the property. 543 F.Supp. at 157. The court ruled that a constructive trust was created at the moment that the decedent obtained possession of the property, and therefore there was no tax liability. *Id.*

The issue was also addressed as part of the holding in *Anderson v. Lybeck*, 15 Ill.2d 227, 154 N.E.2d 259, 262 (1958). In that case, the date when the constructive trust was created was relevant in determining whether the claim was barred by the statute of limitations. *Id.* at 263. The Illinois Supreme Court ruled that the constructive trust was established the moment that the defendant violated his confidential relationship with the plaintiff. *Id.*

In contrast, none of the *Suttles* cases hinge on the timing of the creation of the constructive trust. Had those courts stated that constructive trusts form at the time of the wrong, rather than at the time of a judicial pronouncement, it would not have changed the courts' rulings in any of those cases [8] These courts have typically only mentioned the timing of the creation of a constructive trust in passing, assumedly as a means of familiarizing the uninformed reader with the nature of constructive trusts. *See, e.g., Almar Communs. v. Telesphere Communs. (In re Telesphere Communs.)*, 205 B.R. 535, 545 (N.D.Ill.1997); and *Dunham v. Kisak*, No. 98–CV–0338–PER, 1998 U.S. Dist. LEXIS 22660, at \*16 (S.D.Ill.Dec. 16, 1998).

 In light of the fact that the *Suttles* cases address this issue indirectly, and fail to explicitly overturn the *Stansbury* cases, the Court finds that under Illinois law, "a constructive trust arises at the time of the wrong." *In re DVI*, 306 B.R. at 500. This conclusion is further fortified by the opinions of the majority of the states, which agree "that constructive trusts attach or relate back to the time of the unlawful act that led to the creation of the trust." *Mullins v. Burtch (In re Paul J. Paradise & Assocs.)*, 249 B.R. 360, 371 (D.Del.2000).[9] This rule is also endorsed by the Restatement of Restitution, which states:

> Where a person holding title to property is subject to an equitable duty to convey it to another on the ground that he would be unjustly enriched if he were permitted to retain it, a constructive trust arises.

---

8. Indeed, in *In re DVI, Inc.*, 306 B.R. at 500, Judge Walrath found that *Suttles* pronouncement was "at most...dicta."

9. *See, e.g., Clark v. Wetherill (In re Leitner)*, 236 B.R. 420, 424 n. 12 (Bankr.D.Kan.1999) ("Under the majority state law rule, a constructive trust arises at the time of the occurrence of the events giving rise to the duty to reconvey the property, not at the date of final judgment declaring the trust as Omegas held."); *Electric M & R v. Aultman (In re Aultman)*, 223 B.R. 481, 483 (Bankr.W.D.Pa. 1998) ("[C]onstructive trusts arise when the facts giving rise to the fraud or wrong occur, which fraud or wrong constitutes the basis for impression of the constructive trust.").

Restatement of Restitution § 160 (1937). Notably absent from the Restatement is any provision for the involvement of a court in the creation of a constructive trust.

A constructive trust arose in this case when the Debtor (either intentionally, or by accident) deposited a check made out to Defendant into its own bank account. The Debtor never had an interest in the money and it would not have entered the bankruptcy estate had the Debtor not transferred the money to Defendant. Therefore, the Debtor's transfer to Defendant was not a transfer "of an interest of the debtor in property" under § 547(b).

*Constructive Trusts Are Not Per Se Inconsistent With the Equities of Bankruptcy*

 Plaintiff argues that even if a constructive trust could be applied under Illinois law, it would be inappropriate in this case because constructive trusts are not consistent with the policy of the Bankruptcy Code. In support of this principle Plaintiff cites *In re Omegas Group,* 16 F.3d 1443, 1452 (6th Cir.1994) and *Oxford Org. v. Peterson (In re Stotler & Co.),* 144 B.R. 385, 388 (N.D.Ill.1992). Both of these cases are distinguishable because the parties who requested the constructive trusts had extensive business relationships with the debtor. In *Omegas,* the debtor had an agreement to sell the plaintiff computers that the debtor was to purchase from IBM. 16 F.3d. at 1445. The debtor accepted the plaintiff's money even though the debtor

knew it had maxed out its credit with IBM and could not process the plaintiff's orders. *Id.* at 1446. After the debtor filed for bankruptcy, the plaintiff sued the debtor arguing for a constructive trust because the debtor had made false representations to the plaintiff. *Id.* The Sixth Circuit ruled that, although the debtor had clearly acted inequitably, the plaintiff was just like any other creditor that had done business with the debtor, and therefore imposing a constructive trust would be tantamount to giving the plaintiff priority over all other similarly situated creditors. *Id.* at 1453. The court stated, "Constructive trusts are anathema to the equities of bankruptcy since they take from the estate, and thus directly from competing creditors, not from the offending debtor." *Id.* at 1452.

In *Stotler,* the plaintiff argued for imposition of a constructive trust over commissions that the debtor, a futures commodity merchant, owed to the plaintiff for the referral of a customer. 144 B.R. at 386. The constructive trust, the plaintiff argued, arose out of trade regulations that created a fiduciary relationship between the plaintiff and the debtor. *Id.* The court refused to impose a constructive trust stating that "a constructive trust is fundamentally at odds with the general goals of the Bankruptcy Code.... Imposition of a constructive trust clearly thwarts the policy of ratable distribution and should not be impressed cavalierly." *Id.* at 388.

The statements of the courts in *Omegas* and *Stotler* seem overly broad.[10] In the

10. The Sixth Circuit's assertion that constructive trusts are anathema to the equities of bankruptcy flies in the face of a number of cases in which courts have recognized constructive trusts in the bankruptcy context. *See, e.g., Luker v. Reeves (In re Reeves),* 65 F.3d 670, 673 (8th Cir.1995) (imposing a constructive trust on assets that the debtor had fraudulently transferred and ruling that "[a] constructive trust may be used to make the estate

whole"); *Sommer v. Vermont Real Estate Investment Trust (In re Vermont Real Estate Investment Trust),* 25 B.R. 813 (Bankr.D.Vt. 1982) (imposing a constructive trust where the debtor retained the plaintiff's money in violation of the debtor's relationship of trust and confidence with the plaintiff); *Belisle,* 877 F.2d at 513 (imposing a constructive trust where the debtor convinced several business partners to put up money for the purchase of

context of those cases, the imposition of a constructive trust would have been at odds with the equities of bankruptcy because it would have disturbed the equal treatment of similar creditors. However, the case at hand is different. Defendant is different from all of the Debtor's creditors in that Defendant had no business relationship with the Debtor. Unlike the Debtor's creditors, Defendant did not have a choice as to whether it would have a right as against the Debtor. Furthermore, while the plaintiffs in *Omegas* and *Stotler* sought a constructive trust as a remedy for fraud and unjust enrichment, Defendant in the case at hand seeks recognition of a constructive trust that came into existence as a result of either conversion or theft.

This latter distinction is recognized in *Foos.* In that case the debtor's client, McGrath, promised a law firm that she would pay overdue fees out of the proceeds of a sale of real estate. 183 B.R. at 153. The debtor represented McGrath in the sale of the real estate, and McGrath instructed the debtor to pay the law firm out of the proceeds of the sale. *Id.* The debtor kept the proceeds, mingling them with funds obtained through a Ponzi scheme, and falsely represented to the law firm that the sale had not yet occurred. *Id.* The law firm moved to intervene in an interpleader action and asserted that the debtor was holding its money in constructive trust. *Id.* The court ruled that no constructive trust formed under Illinois law. *Id.* at 159. However, the court stated that it could reach a different result in a situation where a plaintiff sought a constructive trust claiming prior ownership and theft rather than fraud and unjust enrichment. *Id.* at 158 n. 8.

The case most analogous to the case at hand is *In re Unicom Computer Corp.,* 13 F.3d 321 (9th Cir.1994). The debtor in that case mistakenly deposited a check from the defendant into its own account after brokering a computer equipment sublease between the defendant and another party. *Id.* at 322–23. Upon realizing the mistake, the debtor returned the money. *Id.* at 323. But after filing for bankruptcy, the debtor filed a preference action to get the money back. *Id.* The court ruled that, during the time that the money was in the debtor's possession, the debtor was holding the money in constructive trust for the defendant. *Id.* at 325.

*Applicability of § 544(a)*

 Plaintiff argues that even if a constructive trust applies and the money is kept out of the estate under § 541(d), Plaintiff can still bring the money into the estate through the strong arm powers of § 544(a). This section provides:

> The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by—
>
> > (1) a creditor that extends credit to the debtor at the time of the commencement of the case, and that obtains, at such time and with respect to such credit, a judicial lien on all property on which a creditor on a simple contract could have obtained such a judicial lien, whether or not such a creditor exists;
> >
> > (2) a creditor that extends credit to the debtor at the time of the commencement of the case, and obtains, at such time and with respect to such

a leasehold property and then purchased all of the property in his own name); *In re Unicom,* 13 F.3d 321 (imposing a constructive trust where the debtor accidentally deposited the defendant's money into its own account).

credit, an execution against the debtor that is returned unsatisfied at such time, whether or not such a creditor exists . . . .

§ 544(a)(1)-(2).

Plaintiff argues that a hypothetical creditor that obtained a judicial lien or an execution at the time of the Debtor's filing would have a right to the money superior to Defendant's equitable interest. Implicit in Plaintiff's argument is the rule that a constructive trust beneficiary's interest in property is, by definition, an unrecorded interest, which is inferior to the interest of a party with a recorded interest in the property such as a judicial lien or an execution.

However, although it is clear that a trustee may in some situations use § 544(a) to bring assets held by the debtor in constructive trust into the estate, it is not clear that Plaintiff may do that with the money that the Debtor transferred to Defendant in this case. In order for § 544(a) to work with respect to assets held in constructive trust, the rights of a hypothetical creditor who obtains a judicial lien (§ 544(a)(1)) or an execution (§ 544(a)(2)) against the debtor on the filing date must be superior to the rights of an equitable interest holder under the applicable state law. Under Illinois law, neither status would allow Plaintiff to avoid a constructive trust. *In re DVI*, 306 B.R. at 503 (citing *Software Customizer v. Bullet Jet Charter (In re Bullet Jet Charter)*, 177 B.R. 593, (Bankr.N.D.Ill.1995); and *In re Storage Tech. Corp.*, 55 B.R. 479, (Bankr. D.Colo.1985)).

In *Bullet Jet Charter*, the Bankruptcy Court for the Northern District of Illinois ruled that the trustee could not use its § 544(a)(1) strong arm powers to trump Software's equitable rights. 177 B.R. at 604. The court ruled, "The equitable rights of Software, being first in time, take priority over any right that might arise

from the avoiding powers. Those avoidance rights are junior to the equitable ownership rights of Software that take precedence over a hypothetical judgment lien creditor under state law." *Id.* As a constructive trust in Defendant's favor arose in this case at the time that the check from Unilever came into the Debtor's possession, a hypothetical judicial lien or an execution formed at the time of the Debtor's filing would not give Plaintiff a superior right to the money under § 544(a)(1) or (2). Therefore, the Debtor's transfer of $139,208.24 to Defendant was not a transfer of "an interest of the debtor in property" as required by § 547(b) because the Debtor only held that money in a constructive trust, which Plaintiff may not avoid under § 544(a).

*Defendant Was Not a Creditor Under § 547(b)(1)*

■■■ One of the elements that Plaintiff must prove to be successful on this preference action is that the transfer to Defendant was "to or for the benefit of a creditor." § 547(b)(1). The Code defines a creditor as an "entity that has a claim against the debtor." § 101(10)(A). A "claim" is a "right to payment." § 101(5)(A). "Payment" means "[p]erformance of an obligation by the delivery of money or some other valuable thing accepted in partial or full discharge of the obligation." *Black's Law Dictionary* 1165 (8th ed.2004). Although it may be argued that the Debtor had an "obligation" to return the funds, it seems to me that payment in this context implies a relationship between the debtor and the creditor or an obligation consensually entered into or required by law (e.g., a tort claim).

*No Transfer Occurred*

■■■■ There is another reason, independent of the above analysis and not addressed by the parties in their motion papers, why Plaintiff's § 547(b) cause of

action fails. Section 547(e)(3) provides: "For the purposes of this section, a transfer is not made until the debtor has acquired rights in the property transferred." *Collier* restates this provision to say "[a] transfer cannot be 'made' for preference purposes before the debtor has acquired rights in the property transferred." 5 *Collier on Bankruptcy* § 547.05[1][d]. Whether the Debtor intentionally converted the check or accidentally took possession of it, it seems inescapable to me that the Debtor did not have any rights in the check. *Black's Law Dictionary* defines a "right" to include: "The interest, claim, or ownership that one has in tangible or intangible property." *Black's Law Dictionary* 1347. It is clear that the Debtor had no equitable interest in the check and it is equally clear that the Debtor had no legal interest in the check. To put it bluntly, the Debtor wrongfully converted the $139,208.24 funds represented by the check.[11] This wrongful act could not possibly be viewed as giving the Debtor any rights in those funds.[12] This conclusion also makes it clear that a trustee's strong arm powers under § 544(a) could not defeat Defendant's entitlement to the funds.

## CONCLUSION

For the reasons set forth above, Plaintiff's motion for summary judgment is denied and Defendant's cross-motion for summary judgment is granted.

In addition to the preference count, the complaint also seeks (1) "Recovery of Transferred Property Under 11 U.S.C. § 550," (2) "To Preserve Property Pursuant to 11 U.S.C. § 551," and (3) "Disallowance of Claims Pursuant to 11 U.S.C. § 502(d)." All of these counts are derivatives of the preference count and must therefore be dismissed as well.

## ORDER

For the reasons set forth in the Court's memorandum opinion of this date, Defendant's motion for summary judgment (Doc. # 23) is **granted** and Plaintiff's cross-motion for summary judgment (Doc. # 26) is **denied**.

---

11. "Wrongful" is not limited to illegal or unlawful conduct. "Wrongful" includes: "Characterized by unfairness or injustice." *Black's Law Dictionary*, 1644; *see also Suttles*, 533 N.E.2d at 905 ("A constructive trust will not be imposed unless the complaint makes specific allegations of wrongdoing (citing cases), such as fraud, breach of fiduciary duty, duress, coercion or mistake.")

12. Despite these undisputed facts regarding the Debtor's conduct, in one of its briefs, Plaintiff makes the following statement: "If the Debtor had retained the funds as of the Petition Date, Defendant would have no ownership interest in those funds and would have been a mere general unsecured creditor." (Doc. # 26, p. 11.) That statement has no basis in fact or law.