## In re INTERLAKE MATERIAL HANDLING, INC., et al., Debtors.

### Tiare International Inc., Plaintiff

### v.

### United Fixtures Co., Inc., National City Business Credit, Inc., Defendants.

Bankruptcy No. 09–10019 (KJC).

Adversary No. 09–50895 (KJC).

United States Bankruptcy Court, D. Delaware.

Jan. 11, 2011.

438

Edward J. Kosmowski, Epiq Systems Bankruptcy Solutions, Jaime Luton, Kenneth J. Enos, M. Blake Cleary, Young Conaway Stargatt & Taylor, LLP, Maria Aprile Sawczuk, Stevens & Lee, P.C., Wilmington, DE, Jason Jay Scott, Kurtzman Carson Consultants, LLC, El Segundo, CA, Jeremy T. Stillings, Proskauer Rose LLP, Chicago, IL, for Debtors.

## MEMORANDUM[1]

KEVIN J. CAREY, Bankruptcy Judge.

### BACKGROUND

On January 5, 2009 (the "Petition Date"), Interlake Material Handling, Inc. and its related entities (the "Debtors") filed petitions for relief under chapter 11 of the United States Bankruptcy Code with the United States Bankruptcy Court for the District of Delaware (the "Court"). Defendant, United Fixtures Company, Inc. ("UFC"), was one of the Debtors that filed chapter 11. Defendant National City Business Credit ("NCBC") provided debtor in possession financing under the Secured Super–Priority Debtor in Possession Credit and Security Agreement (the "Credit Agreement"), pursuant to a February 11, 2009 Order of the Court.[2]

In accordance with a prepetition distributorship agreement (the "Distributorship Agreement"), UFC, operating through its division, National Store Fixtures ("National Store"), sold shelving product to the plaintiff, Tiare International, Inc., ("Tiare"), which then resold the shelving product to third parties. Tiare commenced this adversary proceeding on April 14, 2009 by filing a Complaint asserting three counts against the Defendants, alleging that certain funds were wrongfully taken and held by the Defendants, instead of being paid over to Tiare. Specifically, Tiare requests (1) a declaratory judgment establishing that the funds are not property of the bankruptcy estate, (2) "turnover" of those same funds to Tiare, and (3) the imposition of a constructive trust.

Before the Court are the Defendants' nearly identical Motions to Dismiss the Complaint.[3] For the reasons set forth below, the Defendants' motions will be granted.

### LEGAL STANDARD FOR A MOTION TO DISMISS

Fed.R.Civ.P. 12(b)(6), made applicable by Fed.R.Bankr.P. 7012(b) governs a motion to dismiss for failing to state a claim upon which relief can be granted. "The purpose of a motion to dismiss is to test the sufficiency of a complaint, not to resolve disputed facts or decide the merits of the case." *Paul v. Intel Corp. (In re Intel Corp. Microprocessor Antitrust Litig.)*, 496 F.Supp.2d 404, 407 (D.Del.2007) citing *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir.1993).

In considering a motion to dismiss under Fed.R.Civ.P. 12(b)(6), the court must accept as true all factual allegations in the complaint and draw all inferences from the facts alleged in the light most favorable to the plaintiff. *Worldcom, Inc. v. Graphnet, Inc.*, 343 F.3d 651, 653 (3d Cir.2003). Fed.R.Civ.P. 8(a)(2), made applicable by Fed.R.Bankr.P. 7008, requires the complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 1964, 167 L.Ed.2d 929 (2007) quoting *Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

---

**1.** This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157(a). This is a core proceeding pursuant to 28 U.S.C. 157(b)(1) and (b)(2)(B).

**2.** UFC and NCBC may be referred to herein collectively as "Defendants."

**3.** NCBC's Motion to Dismiss is docket number 7; UFC's Motion to Dismiss is docket number 11. Oral argument on both motions was held and concluded.

In *Twombly,* the Supreme Court decided that "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly,* 550 U.S. at 555, 127 S.Ct. at 1964–65. See also *Fowler v. UPMC Shadyside,* 578 F.3d 203, 210 (3d Cir.2009) quoting *Ashcroft v. Iqbal,* —— U.S. ——, 129 S.Ct. 1937, 1948–49, 173 L.Ed.2d 868 (2009)("[I]t is clear that conclusory or 'bare-bones' allegations will no longer survive a motion to dismiss; 'threadbare recitals of elements of a cause of action, supported by mere conclusory statements do not suffice.' To prevent dismissal, all civil complaints must now set out 'sufficient factual matter' to show that the claim is facially plausible. This then 'allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.' ")

The relevant record under consideration consists of the complaint and any "document integral or explicitly relied on in the complaint." *U.S. Express Lines, Ltd. v. Higgins,* 281 F.3d 383, 388 (3d Cir.2002), citing *In re Burlington Coat Factory Sec. Litig.,* 114 F.3d 1410, 1426 (3d Cir.1997). The movant carries the burden of demonstrating that dismissal is appropriate. *Intel Corp.,* 496 F.Supp.2d at 408.

## ALLEGED FACTS

For the purpose of considering the Motions to Dismiss, the facts set forth in the Complaint are accepted as true.[4] Under the terms of the Distributorship Agreement, Tiare bought shelving product from National Store, which it then marked-up and resold to its own customers. (Complaint ¶ 7–8.) Because Tiare had limited resources, National Store and Tiare agreed that National Store would issue the invoices for any large orders directly to Tiare's customers. (Complaint ¶ 8.) The total amount invoiced to Tiare's customers consisted of the price Tiare agreed to pay to National Store for the product, plus Tiare's mark-up. (*Id*). After the customers paid the invoice, National Store turned over the mark-up amount to Tiare. (*Id.*) To keep track of what monies belonged to Tiare, National Store prepared a spreadsheet, setting forth the customer's price, Tiare's cost, and the difference, *i.e.,* Tiare's mark-up or revenue. (Complaint ¶ 10.)

Prior to the Petition Date, in November, 2008, Tiare placed an order with National Store for two of its customers. (Complaint ¶ 11.) After the Petition Date, those customers sent checks to National Store in payment for the shelving product the customers had received, which National Store deposited between March 2 and 4, 2009. (Complaint ¶ 12.) The portion of the price paid to National Store that represented Tiare's mark-up was $207,711.13 (the "Mark-up Amount"). (Complaint ¶ 11.)

The Credit Agreement provided that NCBC would sweep UFC's deposit accounts nightly to pay down outstanding amounts owed under the prepetition revolving loan facility. (Complaint ¶ 5.)

---

**4.** In opposing the Motions to Dismiss, Tiare included several supplemental affidavits that were not referenced in the Complaint in its opposition to these Motions. Pursuant to Fed.R.Civ.P. 12(d), made applicable hereto by Fed.R.Bankr.P. 7012, if matters outside the pleadings are presented to the court in connection with a motion to dismiss, the motion may be treated as a summary judgment motion under Fed.R.Civ.P. 56. At oral argument, the Court stated that it was not "inclined to treat this as a summary judgment motion." (Tr. at 14). Tiare agreed. (*Id.*). Therefore, I do not consider the supplemental affidavits.

Therefore, under the terms of the court-approved Credit Agreement, NCBC swept the funds that Tiare's customers paid to National Store the night they were deposited, including the Mark-up Amount. *Id.*

## DISCUSSION

Both Defendants contend that the viability of Tiare's entire Complaint hinges on whether the circumstances warrant imposition of a constructive trust on the Mark-up Amount, as requested in Count III of the Complaint. The Defendants' argue that, absent imposition of a constructive trust, there is no basis for either a declaratory judgment excluding the Mark-up Amount from the estate (Count I), or an order to "turn over" the Mark-up Amount to Tiare (Count II). For the reasons set forth below, I conclude that Tiare has not alleged any plausible basis for imposing a constructive trust on the Mark-up Amount under state law. Consequently, the Complaint will be dismissed.

■ Section 541 of the Bankruptcy Code provides that the commencement of a bankruptcy case creates an estate comprised of "all legal and equitable interests of the debtor in property." 11 U.S.C. § 541. "Where the debtor's 'conduct gives rise to the imposition of a constructive trust, so that the debtor holds only bare legal title to the property, subject to a duty to reconvey it to the rightful owner, the estate will generally hold the property subject to the same restrictions.'" *In re Howard's Appliance Corp.*, 874 F.2d 88, 93 (2d Cir.1989) quoting *In re Flight Transp. Corp. Securities Litigation*, 730 F.2d 1128, 1136 (8th Cir.1984).

■ Property interests are creatures of state law and "the happenstance of bankruptcy" should not inform the way courts analyze them. *Butner v. United States*, 440 U.S. 48, 55, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979); *Travelers Casualty &*

*Surety Co., v. Pacific Gas & Electric Co.*, 549 U.S. 443, 450–51, 127 S.Ct. 1199, 167 L.Ed.2d 178 (2007). Accordingly, the determination of whether a constructive trust should be imposed is a question of state law. *Howard's Appliance*, 874 F.2d at 93. Under the terms of the parties' contract, Illinois law applies here.

■ The Illinois Supreme Court described a constructive trust as follows:

A constructive trust is one raised by operation of law as distinguished from a trust created by express agreement between the settlor and the trustee. A constructive trust is created when a court declares the party in possession of wrongfully acquired property as the constructive trustee of that property, because it would be inequitable for that party to retain possession of the property. The sole duty of the constructive trustee is to transfer title and possession of the wrongfully acquired property to the beneficiary

*Suttles v. Vogel*, 126 Ill.2d 186, 127 Ill.Dec. 819, 533 N.E.2d 901, 904 (1988) (citations omitted). The Illinois Supreme Court set forth the circumstances under which a constructive trust should be imposed:

A constructive trust will not be imposed unless the complaint makes specific allegations of wrongdoing, such as fraud, breach of a fiduciary duty, duress, coercion or mistake. Furthermore, the grounds for imposing a constructive trust must be so clear, convincing, strong and unequivocal as to lead to but one conclusion.

*Id.,* 127 Ill.Dec. 819, 533 N.E.2d at 905. Mere nonpayment of a money debt is not "wrongdoing" sufficient to justify imposition of a constructive trust. *Midwest Decks, Inc. v. Butler & Baretz Acquisitions, Inc.*, 272 Ill.App.3d 370, 381, 208 Ill.Dec. 455, 649 N.E.2d 511 (1995). Nor

will a breach of contract give rise to a constructive trust. *In re Stotler and Co.*, 144 B.R. 385, 390 (N.D.Ill.1992); *Bear Kaufman Realty, Inc. v. Spec Development, Inc.*, 268 Ill.App.3d 898, 906, 206 Ill.Dec. 239, 645 N.E.2d 244 (1994).

 Tiare argues that the alleged facts support a finding of wrongdoing against the Defendants because the Defendants' claimed ownership of the Mark-up Amount is based on mistake or theft, since "a debtor cannot improve its position and create rights to property that do not exist outside of bankruptcy." Tiare Brief in Opposition, D.I. 16 at p. 10, citing 5 COLLIER ON BANKRUPTCY § 541.04 (15th ed. 2006). Tiare relies on *In re Bake–Line Group, LLC*, 359 B.R. 566 (Bankr.D.Del.2007), in which the Court imposed a constructive trust. In *Bake–Line*, the debtor received a check in the mail that was made payable to the defendant, with whom the debtor had no business or other relationship. *Id.* at 568. The debtor deposited the check into its own bank account and then, realizing its mistake (or acknowledging its wrongdoing—it was unclear which was the case), the debtor returned the funds to the defendant. *Id.* The trustee in bankruptcy argued that the debtor's transfer, returning the funds to the defendant, was an avoidable preference. *Id.* at 569. The *Bake–Line* Court held that the debtor never had an interest in the property and merely held the funds in constructive trust for the defendant. *Id.*

The *Bake–Line* case is inapposite to the matter before me. In contrast to the facts in *Bake–Line*, the checks at issue in this case were made payable to National Store. Tiare had a long-standing, arms-length business relationship with National Store. The Mark-up Amount was deposited according to normal business practice and swept from the account pursuant to an Order of this Court. (D.I. 222). The facts alleged in the Complaint, viewed in the light most favorable to Tiare, do not provide a plausible basis for determining that there was any mistake or wrongdoing by the Defendants.

Another pertinent decision is *In re Stotler and Co.*, 144 B.R. 385, 390 (N.D.Ill. 1992), which considered whether to impose a constructive trust on funds held by a trustee in bankruptcy. There, the plaintiff, an introducing broker ("IB"), referred one of its customers to the debtor, a futures commodities merchant ("FCM"). *Id.* Pursuant to a detailed contract, the IB was to be paid part of the commission that the FCM charged its customer. *Id.* In *Stotler*, the plaintiff (along with many other IBs) did not receive the commission for its referral and argued, under a theory of breach of fiduciary duty, that a constructive trust should be imposed on funds in the defendant trustee's possession. *Id.* at 386. The *Stotler* court held that the plaintiff failed to establish the requisite fiduciary relationship and declined to impose a constructive trust. *Id.* at 389. Rather, the court observed that the plaintiff's only claim was one for breach of contract. *Id.* at 390.

 There are no facts alleged to support the existence of a fiduciary relationship between National Store and Tiare. "Generally, where parties capable of handling their business affairs deal with each other at arm's length, and there is no evidence that the alleged fiduciary agreed to exercise its judgment on behalf of the alleged servient party, no fiduciary relationship will be deemed to exist." *Midwest Decks*, 272 Ill.App.3d at 380, 208 Ill. Dec. 455, 649 N.E.2d 511.

## CONCLUSION

Tiare has not alleged any plausible basis in the Complaint based upon which a constructive trust could be imposed under Illi-

nois law (*i.e.* fraud, breach of a fiduciary duty, duress, coercion or mistake). An appropriate order follows.