**Diane LORIX, individually and on behalf of all others similarly situated, Appellant,**

v.

**CROMPTON CORPORATION, et al., Respondents.**

No. A05–2148.

Court of Appeals of Minnesota.

Aug. 22, 2006.

Garrett D. Blanchfield, Jr., Frances E. Baillon, Reinhardt Wendorf & Blanchfield, St. Paul, MN, for appellant.

Michael A. Lindsay, Michael Skoglund, Dorsey & Whitney LLP, and James S. Simonson, Gray, Plant, Mooty, Mooty & Bennett PA, Minneapolis, MN, and Ian Simmons, Benjamin G. Bradshaw, O'Melveny & Myers, LLP, and J. Andrew Read, Jones Day, Washington, D.C., for respondents.

Considered and decided by SHUMAKER, Presiding Judge; WILLIS, Judge; and ROSS, Judge.

## OPINION

ROSS, Judge.

This is a case about alleged price-fixing under the Minnesota Antitrust Act in the sale of chemicals used in the tire-manufacturing process. In this appeal from judgment on the pleadings for lack of standing, appellant tire-consumer Diane Lorix argues that the district court erred by applying an incorrect standing standard and by determining that her claimed injuries are too remote to confer standing. We conclude that Lorix lacks standing because she does not allege that she is a participant in the market restrained by the alleged antitrust violations. We therefore affirm.

## FACTS

Lorix's complaint asserts that respondents Crompton Corporation, Uniroyal Chemical Company, Inc., Uniroyal Chemical Company Limited, and Bayer Corporation conspired to fix the price of rubber-processing chemicals that are sold for use in manufacturing automobile tires. Lorix does not allege that she purchased any overpriced chemicals herself. Lorix alleges instead that she purchased tires that had been made using these chemicals and that she overpaid because the tire manufacturers passed the overcharges resulting from respondents' price-fixing of the chemicals along to her as an ultimate consumer of tires. Lorix purports to represent a class of similarly situated consumers.

Respondents moved for judgment on the pleadings, arguing that because Lorix lacks standing, she has failed to state a claim on which relief can be granted. The district court found that Lorix failed to allege that she is a participant in the allegedly restrained market and that Lorix's injuries are too remote to confer standing. It granted respondents' motion and dismissed Lorix's lawsuit. Lorix's appeal follows.

## ISSUE

Did the district court err by determining that Lorix's injuries are too remote from

the alleged antitrust violation to confer standing and by dismissing Lorix's claims for lack of standing?

## ANALYSIS

■ Lorix argues that the district court erred by dismissing her antitrust claim against respondents. A district court may dismiss a claim on the pleadings when a plaintiff fails to set forth a legally sufficient claim for relief. Minn. R. Civ. P. 12.03. Courts must accept the allegations in the pleadings as true and draw all inferences in favor of the non-moving party when considering a motion for judgment on the pleadings. *Martens v. Minn. Mining & Mfg. Co.*, 616 N.W.2d 732, 740, n. 9 (Minn.2000). This court reviews de novo whether the district court erred as a matter of law when the facts relating to standing are undisputed. *Conant v. Robins, Kaplan, Miller & Ciresi, L.L.P.*, 603 N.W.2d 143, 146 (Minn.App.1999), *review denied* (Minn. Mar. 14, 2000).

■ Lorix challenges the district court's determination of her lack of standing. To have standing, a party must have "a sufficient stake in a justiciable controversy." *State by Humphrey v. Philip Morris Inc.*, 551 N.W.2d 490, 493 (Minn. 1996) (citing *Sierra Club v. Morton*, 405 U.S. 727, 731–32, 92 S.Ct. 1361, 1364–65, 31 L.Ed.2d 636 (1972)). A party has standing either by suffering an injury in fact or when standing is conferred by legislative enactment. *Nash v. Wollan*, 656 N.W.2d 585, 588 (Minn.App.2003), *review denied* (Minn. Apr. 29, 2003). Both the state and federal antitrust statutes contain language "broadly grant[ing] standing to maintain private antitrust suits." *Philip Morris Inc.*, 551 N.W.2d at 495; *see also Blue Shield v. McCready*, 457 U.S. 465, 472, 102 S.Ct. 2540, 2544, 73 L.Ed.2d 149 (1982) (noting that "the lack of restrictive language reflects Congress' 'expansive remedial purpose' ").

■ We will look to construction of federal antitrust law when applying the state statute. In 1971, the Minnesota legislature passed the Minnesota Antitrust Act, codifying most of the pre–1971 federal antitrust caselaw and following most provisions of the federal antitrust act. *State by Humphrey v. Alpine Air Prods. Inc.*, 490 N.W.2d 888, 893 (Minn.App.1992), *aff'd by* 500 N.W.2d 788 (Minn.1993). Consequently, Minnesota antitrust law should be construed consistently with the federal courts' interpretation of analogous federal antitrust provisions. *Keating v. Philip Morris, Inc.*, 417 N.W.2d 132, 136 (Minn.App. 1987).

We must consider the reach of the Minnesota antitrust statute's damages provision. That provision states that "[a]ny person ... injured directly or indirectly by a violation of [the Minnesota Antitrust Act] shall recover three times the actual damages sustained.... In any subsequent action arising from the same conduct, the court may take any steps necessary to avoid duplicative recovery against a defendant." Minn.Stat. § 325D.57 (2004). In 1984, the Minnesota legislature added the words "directly or indirectly" to section 325D.57, providing indirect purchasers a cause of action against antitrust violators. 1984 Minn. Laws ch. 458, § 1. The amendment was a response to federal caselaw that barred indirect purchasers' claims under the federal antitrust statute. *Keating*, 417 N.W.2d at 136 ("The legislative history of this amendment indicates that it was a direct response to the [United State's Supreme Court's] *Illinois Brick* decision."). Resolution of the issue before us hangs on whether the term "indirectly" may be so broadly applied as to include Lorix's claims against respondents.

■ Lorix asserts that she was indirectly injured by respondents' alleged conspiracy to fix the price of their rubber-processing chemicals. She concedes that she did not purchase respondents' chemical products. She argues instead that as a result of respondents' conspiracy, which allegedly resulted in automobile-tire manufacturers being illegally overcharged when buying chemicals necessary in their manufacturing process, these manufacturers passed the overcharges on to tire purchasers. She alleges that the antitrust statute entitles her to damages because she paid a premium for automobile tires because of these overcharges.

Lorix argues that section 325D.57 confers indirect-purchaser standing to *any* purchaser indirectly injured by an antitrust violation, however attenuated the link between the antitrust violation and the purchase. Lorix would have us read the ambiguous term, "indirectly," without any limitation whatsoever. At oral argument, Lorix's counsel expounded, insisting that even those who purchase used goods would have standing to sue a remote manufacturer if the purchaser paid more for the used goods than she would have absent an antitrust violation. Lorix's counsel also maintained that even a television purchaser would have indirect-purchaser standing to sue an oil company for antitrust violations if price fixing increased the cost of gasoline, which in turn increased the cost of transportation and ultimately the cost of the television. Counsel went so far as to declare that every Minnesota citizen could bring an antitrust suit against rubber-processing chemical manufacturers because price-fixing resulted in the increased price of tires, which in turn increases the cost of transportation and, therefore, the cost of goods transported by truck.

■ This argument stretches the term "indirectly" far beyond reason. Antitrust violations always "cause ripples of harm to flow" throughout the economy, but antitrust legislation is not intended "to allow every person tangentially affected by an antitrust violation to maintain an action." *McCready*, 457 U.S. at 476–77, 102 S.Ct. at 2547. Applying Lorix's argument, even a garage-sale purchaser of a second-hand desk would have standing to maintain an antitrust action against iron suppliers who sold raw materials to bolt manufacturers, who in turn sold bolts to a hardware wholesaler, who sold hardware to the desk builder, who sold desks to the retailer, who sold a desk to Mr. Doe, who finally unloaded it in the garage sale. Although we acknowledge the "expansive grant of standing" in section 325D.57, *see Philip Morris Inc.*, 551 N.W.2d at 496, we presume that the legislature did not intend such an absurd or unreasonable result. Minn.Stat. § 645.17(1) (2004); *Olson v. Ford Motor Co.*, 558 N.W.2d 491, 494 (Minn.1997) (noting that courts will look beyond the literal meaning of a statute's words if the plain meaning will produce an absurd result). We reject Lorix's unlimiting construction.

Respondents counter, arguing that to have standing to bring an antitrust claim, an indirect purchaser must be a participant in the allegedly restrained market. We agree. Federal courts have consistently held that an antitrust plaintiff must be a consumer or competitor in the market restrained by alleged antitrust violations. *Assoc. Gen. Contractors v. Calif. State Council of Carpenters*, 459 U.S. 519, 538–39, 103 S.Ct. 897 908–09, 74 L.Ed.2d 723 (1983) (noting that antitrust legislation protects "the economic freedom of participants in the relevant market"); *Brunswick Corp. v. Pueblo Bowl–O–Mat, Inc.*, 429 U.S. 477, 489, 97 S.Ct. 690, 697, 50 L.Ed.2d 701 (1977) (requiring that to recover damages, a plaintiff must suffer an "injury of

the type the antitrust laws were intended to prevent and that flows from that which makes defendants' acts unlawful"); *S.D. Collectibles, Inc. v. Plough, Inc.,* 952 F.2d 211, 213 (8th Cir.1991) (noting that "[a] mere causal connection between the alleged antitrust injury and the plaintiff's alleged harm provides an insufficient basis for recovery" and that "standing is generally limited to actual market participants, that is, competitors or consumers"). Lorix argues that federal antitrust-standing cases are inapposite because Minnesota law extends antitrust standing to indirect purchasers who are explicitly barred from maintaining claims under federal antitrust law. But whether an indirect purchaser is allowed to bring suit is "analytically distinct" from the "more difficult question 'of which persons have sustained injuries *too remote* [from an antitrust violation] to give them standing to sue for damages.'" *McCready,* 457 U.S. at 476, 102 S.Ct. at 2546 (emphasis added). Minnesota's response to federal caselaw barring indirect-purchaser claims does not obviate the requirement that an antitrust plaintiff be a participant or competitor in the market restrained by the alleged antitrust violation. Rather, it extends standing to indirect purchasers in that market.

Lorix's complaint alleges that respondents conspired to fix the price of rubber-processing chemicals they sold to tire manufacturers and that, as a result, she paid more for the tires made with respondents' rubber-processing chemicals than she otherwise would have paid. Our standard of review requires that we accept these allegations as true. *See Martens,* 616 N.W.2d at 740, n. 9. But Lorix fails to allege any facts to allow an inference that she is a participant in the rubber-processing-chemical market, which is the market restrained by respondents' alleged antitrust violations. We therefore conclude that Lorix lacks standing to maintain an antitrust suit against respondents and that she has therefore failed to state a claim upon which relief can be granted.

## DECISION

Because Lorix is not a participant in the market restrained by respondents' alleged antitrust violations, Lorix lacks standing to sue under the Minnesota Antitrust Act. The district court did not err by entering judgment on the pleadings in respondents' favor.

**Affirmed.**