## In re INTEL CORP. MICROPROCESSOR ANTITRUST LITIGATION

**Phil Paul, on behalf of himself and all others similarly situated, Plaintiffs,**

**v.**

**Intel Corporation, Defendant.**

**No. MDL 05–1717 JJF.**
**Civil Action No. 05–485–JJF.**

United States District Court,
D. Delaware.

July 12, 2007.

Michael D. Hausfeld, Esquire; Daniel A. Small, Esquire; Brent W. Landau, Esquire and Allyson B. Baker, Esquire of Cohen, Milstein, Hausfeld & Toll, P.L.L.C., Washington, DC, Michael P. Lehmann, Esquire; Thomas P. Dove, Esquire and Alex C. Turan, Esquire of Furth Lehmann & Grant LLP, San Francisco, CA, James L. Holzman, Esquire; J. Clayton Athey, Esquire and Laina M. Herbert, Esquire of Prickett Jones & Elliott, P.A., Wilmington, DE, Interim Liaison Counsel for the Class Plaintiffs.

David M. Balabanian, Esquire; James L. Hunt, Esquire; Christopher B. Hockett, Esquire and Nora C. Cregan, Esquire of Bingham McCutchen LLP, San Francisco, CA, Richard A. Ripley, Esquire of Bingham McCutchen LLP, Washington, DC, Richard L. Horwitz, Esquire and W. Harding Drane, Jr., Esquire of Potter Anderson & Corroon LLP, Wilmington, DE, for Defendant Intel Corporation.

### *MEMORANDUM OPINION*

FARNAN, District Judge.

Pending before the Court is Defendant Intel Corporation's Motion To Dismiss The First Amended Consolidated Complaint (D.I. 217 in Civil Action No. 05–485 and D.I. 307 in MDL Docket No. 05–1717).[1] For the reasons discussed the Court will grant-in-part and deny-in-part Defendant's Motion.

### BACKGROUND

The background related to this action has been set forth by the Court in its previous decision (D.I.299) addressing the Motion To Dismiss Class Plaintiffs Foreign Conduct Claims filed by Defendant Intel Corporation ("Intel"). *In re Intel Corp. Microprocessor Litig.*, 2007 WL 685564, *1–2 (D.Del. Mar. 7, 2007). By

---

1. In citing to additional documents throughout this Memorandum Opinion, the Court will refer to the docket item numbers used in Civil Action No. 05–485–JJF.

way of brief summary, Class Plaintiffs filed multiple class action lawsuits against Intel after it was sued by Advanced Micro Devices, Inc. and AMD International Sales & Service, Ltd. (collectively, "AMD"). Those lawsuits have been consolidated here.

Class Plaintiffs represent United States consumers who purchased computers containing Intel x86 microprocessors. The allegations of Class Plaintiffs' First Amended Consolidated Complaint (the "Complaint") are similar to, and at times, identical to the allegations of AMD's Complaint. Class Plaintiffs allege seven causes of action, including: (1) Section 2 of the Sherman Act, 15 U.S.C. § 2 (Count I); (2) Section 16720 of the California Business and Professional Code for unlawful trust in restraint of trade and commerce (Count II); (3) the prohibition against monopolies under California state tort law (Count III); (4) Section 1700 et seq. of the California Business and Professional Code for unfair competition (Count IV); (5) antitrust and restraint of trade violations under the laws of nineteen states and the District of Columbia (Count V); (6) consumer protection and/or unfair competition violations under the laws of twenty-two states and the District of Columbia (Count VI); and (7) unjust enrichment and disgorgement of profits under the common law of California, or alternatively the common law of the other States at issue and the District of Columbia (Count VII). Class Plaintiffs seek a variety of relief, including punitive damages, treble damages, disgorgement of profits, the establishment of a constructive trust from which the Class Plaintiffs can seek restitution based on the disgorgement of profits, the costs of bringing this lawsuit, and reasonable attorneys' fees.

By the instant Motion, Intel requests the Court to dismiss the Complaint pursuant to Rule 12(b)(6) for failure to state a claim and lack of standing. The parties have fully briefed Intel's Motion, and therefore, this matter is ready for the Court's review.

## STANDARD OF REVIEW

Pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court may dismiss a complaint for failure to state a claim upon which relief may be granted. Fed.R.Civ.P. 12(b)(6). Rule 12 § b)(6) is also invoked for questions of antitrust standing. *Maio v. Aetna, Inc.,* 221 F.3d 472, 481 n. 7 (3d Cir.2000).

The purpose of a motion to dismiss is to test the sufficiency of a complaint, not to resolve disputed facts or decide the merits of the case. *Kost v. Kozakiewicz,* 1 F.3d 176, 183 (3d Cir.1993). While the Court must accept as true all allegations in the complaint and must draw all reasonable factual inferences in the light most favorable to the plaintiff, the "[f]actual allegations must be enough to raise a right to relief above the speculative level . . ." *Bell Atlantic Corp. v. Twombly,* —— U.S. ——, ——, 127 S.Ct. 1955, 1965, 167 L.Ed.2d 929 (2007).[2] Heightened fact pleading is not

---

**2.** Intel filed a Supplemental Brief addressing the *Twombly* decision. Class Plaintiffs have also filed a response. The Second Circuit recently identified and discussed the "conflicting signals" from *Twombly* in determining how that decision impacts the standard for reviewing a motion to dismiss. *Iqbal v. Hasty,* 490 F.3d 143, 154–57 (2d Cir.2007). While the Second Circuit acknowledged that *Twombly* dealt with antitrust claims under Section 1 of the Sherman Act, the Second Circuit also acknowledged that the Supreme Court likely intended some change in the dismissal standard extending beyond antitrust conspiracy cases.

The Court understands *Twombly* to primarily be a decision aimed at bringing the standard of dismissal back to its "roots" by undoing the literal reading of *Conley v. Gibson,* 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957), engaged in by some courts and emphasizing that *Conley* "described the breadth of opportunity to prove what an adequate complaint

required, but enough facts must be alleged to state a claim to relief that is plausible on its face. *Id.* at 1974. The Court is not required to accept legal conclusions alleged or inferred from the pleaded facts. "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Twombly,* 127 S.Ct. at 1969. The burden of demonstrating that dismissal is appropriate rests on the movant.

## DISCUSSION

### I. Whether Class Plaintiffs Have Stated A Claim Under Federal Or State Antitrust Laws

#### A. *Antitrust Standing*

■ To demonstrate standing for the purposes of pursuing an antitrust claim, Class Plaintiffs must demonstrate the Constitutional standing requirements of Article III, § 2, namely a "case" or "controversy." However, the Constitutional standing requirements are "augmented by consideration of prudential limitations." *City of Pittsburgh v. West Penn Power Co.,* 147 F.3d 256, 264 (3d Cir.1998). Specifically, Class Plaintiffs must demonstrate that they have antitrust standing and are the proper parties to bring a private antitrust action. *Id.* In *Associated General Contractors of California v. California State Council of Carpenters,* 459 U.S. 519, 537–545, 103 S.Ct. 897, 74 L.Ed.2d 723 (1983), the Supreme Court outlined five factors that courts should consider when determining whether a party has standing to bring a private action under the antitrust laws. These factors include: (1) whether plaintiff's alleged injury is the type of injury that the antitrust laws were intended to

redress (i.e., the antitrust injury requirement); (2) the causal connection between the antitrust violation and the harm to the plaintiff, including the defendant's intent to cause that harm; (3) whether the injury is a direct injury or a speculative injury; (4) whether there are more direct victims of the alleged antitrust violations; and (5) the potential for duplicative recovery or complex apportionment of damages. *West Penn,* 147 F.3d at 264 (restating the *Associated General Contractors ("AGC")* factors).

Intel contends that Class Plaintiffs cannot demonstrate antitrust injury because they received the benefit of Intel's alleged price cuts and rebates. According to Intel, Class Plaintiffs cannot allege antitrust injury, because low prices benefit consumers, regardless of how those prices are set. Intel further contends that Class Plaintiffs cannot demonstrate that the remaining *AGC* factors support their assertion that they have antitrust standing.

In response, Class Plaintiffs contend that the heightened prudential standing requirements represented by the *AGC* five-factor test are not relevant to Class Plaintiffs' antitrust claims. Class Plaintiffs point out that their only federal claim is a claim for injunctive relief under Section 16 of the Clayton Act, 15 U.S.C. § 16, and Class Plaintiffs contend that Section 16 is not as demanding as Section 4. Under Section 16, Class Plaintiffs contend that they need only establish a threat of antitrust injury.

Although Class Plaintiffs seek damages under state antitrust laws, Class Plaintiffs contend that the *AGC* factors do not apply to those claims. Rather, Class Plaintiffs

claims, not the minimum standard of adequate pleading to govern a complaint's survival." 127 S.Ct. at 1969. For purposes of Intel's motion here, the Court will apply, where applicable, what the Second Circuit

has coined the "flexible plausibility standard" of *Twombly* to Class Plaintiffs' claims as outlined by the Court in its recitation of the standard of review governing Intel's Motion.

contend that the appropriate standing analysis for these claims must look to state law, not federal law, because state law permits indirect purchasers to bring antitrust claims. In the alternative, Class Plaintiffs contend that the *AGC* factors weigh in favor of Class Plaintiffs' standing, and in any event, standing is a fact-intensive inquiry best left to later stages of the proceedings when the parties have the benefit of a more fully developed factual record.

The Court begins its analysis by determining whether it is appropriate to apply the *AGC* five-factor test to all of Class Plaintiffs' claims. The Court has reviewed the parties' arguments concerning this issue and concludes that it is appropriate to apply the *AGC* factors if not directly, at least as a guide, in evaluating Class Plaintiffs' state law antitrust claims. Relying on *D.R. Ward Construction Co. v. Rohm & Haas Co.*, 470 F.Supp.2d 485 (E.D.Pa. 2006), Class Plaintiffs contend that the *AGC* factors are inapplicable to state law claims, even where the applicable state law has a "permissive" harmonization statute that allows federal courts to use federal law as a guide in interpreting them. However, the Court finds *D.R. Ward* to be inconsistent with the prevailing approach to this question by courts applying the laws of states that have rejected the *Illinois Brick* prohibition on indirect purchaser suits. *Lorix v. Crompton Corp.*, 720 N.W.2d 15, 18–19 (Minn.2006); *Kanne v. Visa U.S.A., Inc.*, 272 Neb. 489, 723 N.W.2d 293, 301 (2006); *Strang v. Visa U.S.A., Inc.*, 2005 WL 1403769, *3–5 (Wis. Cir. Ct. Feb. 8, 2005); *Peterson v. Visa U.S.A., Inc.*, 2005 WL 1403761, *3–6 (D.C. Super. Apr. 22, 2005); *Southard v. Visa U.S.A., Inc.*, 2004 WL 3030028, *3–4 (Iowa Dist. Nov. 17, 2004).

The Court further agrees with Intel, that Class Plaintiffs' argument against the use of federal law as a guideline blurs the distinction between the question of standing and the question of whether indirect purchasers may sue for antitrust injury. That numerous state courts have declined to apply the indirect purchaser bar announced by the Supreme Court in *Illinois Brick* does not equate with the question of whether standing under those states' laws should be informed by federal law.

As for Class Plaintiffs' federal law claim, the Court notes that Class Plaintiffs are correct that plaintiffs bringing claims under Section 16 of the Sherman Act need only demonstrate a threat of loss for injunctive relief; however, Section 16 plaintiffs are still required to demonstrate that the threatened injury is the type of injury the antitrust laws were designed to prevent. Accordingly, in light of the foregoing, the Court will loosely apply the *AGC* factors as a guide in analyzing the standing issues relevant to Class Plaintiffs' federal and state law claims.

■■■ To establish an antitrust injury, a plaintiff must allege a type of injury that the antitrust laws were designed to prevent and which flows from the conduct that makes the defendant's actions unlawful.[3] *Brunswick Corp. v. Pueblo Bowl–O–Mat, Inc.*, 429 U.S. 477, 489, 97 S.Ct. 690, 50 L.Ed.2d 701 (1977). Reviewing the Complaint in the light most favorable to Class Plaintiffs as the Court must on a motion to dismiss, the Court concludes that Class Plaintiffs have sufficiently alleged antitrust injury at this juncture. Class Plaintiffs have alleged that Intel engaged in a variety of anticompetitive actions

> with the goal of keeping competitors small and keeping Intel's customers de-

---

**3.** Class Plaintiffs agree with Intel that this element of *AGC* applies to both their federal and state claims; however, Class Plaintiffs contend that the antitrust injury under Section 16 is less demanding than Section 4 and broader for their state law claims.

pendent on Intel for very substantial amounts of product. In this way, OEMs remain vulnerable to continual threats of Intel retaliation, Intel's competitors remain capacity-constrained, the OEMs remain Intel-dependent, and Intel thereby perpetuates its economic hold over them, allowing it to continue to demand that customers curtail their dealings with Intel's competitors.

Complaint at ¶ 141. According to Class Plaintiffs this anticompetitive conduct allowed Intel to garner a higher market share, which allowed Intel to charge higher prices to consumers. *Id.* at 1, 2, 5. By keeping their rivals small, Class Plaintiffs contend that Intel prevents them from offering lower-priced or higher quality products. If its rivals were able to offer such products, Intel would then be forced in turn to lower its own prices. Stated another way, Class Plaintiffs have alleged that "but for" Intel's anticompetitive conduct, Intel's prices would have been lower. Injury in the form of higher prices to consumers is within the type of injury that the antitrust laws are designed to prevent. *See e.g., Allegheny Gen. Hosp. v. Philip Morris, Inc.,* 228 F.3d 429, 439 (3d Cir. 2000).

Intel contends that Class Plaintiffs cannot state an antitrust injury because their arguments are based on Intel's average prices overall, and Plaintiffs have not alleged (and cannot allege) how industry-wide average prices of Intel chips affect the transaction prices of the products they actually purchased. (D.I. 293 at 10.) However, the cases Intel cites to support its argument are in the context of class certification disputes.

Intel also contends that Class Plaintiffs' argument involves too speculative a chain of events, and therefore, any alleged injury is too remote and speculative to establish that the alleged injury flowed from Intel's alleged anticompetitive conduct. "The concept of antitrust injury overlaps with the [causation] factor in the balancing test because the injury must be causally related to the defendant's allegedly anticompetitive activity." *West Penn,* 147 F.3d at 265. At this early stage of the proceedings, the Court concludes that Class Plaintiffs have sufficiently alleged "but for" causation. However, the Court acknowledges that the parties' arguments are complex and intensely factual, and therefore, the Court concludes that a more fully developed factual record is necessary to address them.

As for the remaining three *AGC* factors, the Court concludes that they carry less weight in the standing analysis in jurisdictions rejecting *Illinois Brick,* For example, in applying the fourth *AGC* factor, the Court must determine whether there are more direct victims of the alleged antitrust violations. However, under the state statutes asserted by Class Plaintiffs, indirect purchasers are permitted to bring claims, and therefore, the existence of more direct victims would not necessarily undercut Class Plaintiffs' standing. Accordingly, the Court concludes that the allegation of the Complaint are sufficient to withstand dismissal, and therefore, the Court will deny Intel's Motion To Dismiss based on the failure to allege antitrust standing.

## B. *Choice Of Law*

Intel next requests the Court to dismiss Class Plaintiffs' claims for violation of California law as alleged in Count II (violation of the Cartwright Act); Count III (California tort law against monopolization) and Count IV (violation of the California Unfair Competition Law), as those Counts pertain to non-California Plaintiffs. Intel's request for dismissal implicates a choice of law analysis. Specifically, Intel contends that it is inappropriate to apply California law on a nation-wide basis, because such

application would frustrate the laws of other states who also have an interest in this litigation. In conducting this choice of law analysis, Intel contends that the Court must apply the choice of law rules of the transferor forum states, namely Delaware, California, Florida and Tennessee.

Class Plaintiffs agree that a choice of law analysis is necessary in this case; however, they believe it should be reserved until class certification proceedings. In any event, Class Plaintiffs contend that the appropriate choice of law analysis is for this Court to apply California choice of law principles because the majority of the transferred cases came from California, with only two cases coming from Tennessee and only one case from Florida.

The Court agrees with Class Plaintiffs that analysis of the choice of law questions presented in this litigation should be deferred. This litigation is still in its infancy, and the Court concludes that these complex and sometimes dispositive choice of law questions should be made with the benefit of a more complete context for this litigation. Accordingly, the Court declines to engage in a choice of law analysis at this time, and therefore, the Court will deny Intel's Motion to the extent that it seeks dismissal of claims under California law asserted by Class Plaintiffs who do not live in California.

C. *Antitrust Claims Asserted Under The Laws Of The States Of Mississippi, Nevada, South Dakota, West Virginia And The District Of Columbia*

Intel next contends that Class Plaintiffs have failed to state claims under the antitrust laws of Mississippi, Nevada, South Dakota, West Virginia and the District of Columbia.[4] Intel contends that these jurisdictions limit the reach of their antitrust laws to intrastate conduct. According to Intel, Class Plaintiffs' Complaint alleges the monopolization of a world-wide market. Thus, Intel contends that Class Plaintiffs have failed to allege that Intel engaged in any state-specific conduct or that Intel directed its alleged anticompetitive conduct toward any particular state.

Directing the Court to case law applying the laws of the four states at issue and the District of Columbia, Class Plaintiffs respond that Intel's alleged conduct has both an intrastate and interstate component. Class Plaintiffs contend that the sales of computers containing Intel x86 microprocessors occurred wholly within the four states and the District of Columbia, and therefore, any intrastate component required by these laws is satisfied. Class Plaintiffs also point out that they have alleged injury throughout the United States and the District of Columbia. Specifically, Class Plaintiffs direct the Court to the following allegations contained in the Complaint:

248. Intel's contracts, trusts or conspiracies were entered into, carried out, effectuated and perfected mainly within the State of California, and Intel's conduct within California injured all Class members throughout the United States. Therefore, this claim for relief under California law is brought on behalf of all Class members, whether or not they are California residents.

251. The contracts, trusts or conspiracies alleged herein have had, inter alia, the following effects:

a. price competition in the sale of microprocessors has been restrained,

---

**4.** Defendants have included the State of New York in their argument as the fifth state at issue. However, Plaintiffs' claims under New York law fail for reasons apart from the intra-state pleading requirement, and therefore, the Court will not discuss New York law here. *See infra* Section I.D. of the Discussion portion of this Memorandum Opinion.

suppressed and/or eliminated in the State of California and throughout the United States;

b.  prices for microprocessors sold by Intel and its co-conspirators have been fixed, raised, maintained and stabilized at artificially high, non-competitive levels in the State of California and throughout the United States; and

c.  those who purchased microprocessors from Intel have been deprived of the benefit of free and open competition.

252.  Plaintiffs and the Class members paid and continue to pay supra-competitive, artificially inflated prices for microprocessors.

253.  As a direct and proximate result of Intel's unlawful conduct, Plaintiffs and the Class members have been injured in their business and property in that they paid more for Intel's x86 microprocessors (or for products containing such microprocessors) than they would have paid absent Intel's unlawful conduct.  As a result of Intel's violation of Section 16720, Plaintiffs and the Class members seek treble damages and the costs of suit, including reasonable attorneys' fees, pursuant to Section 16750(a) of the California Business and Professions Code.

The Court will address the parties' arguments in the context of the law of each of the challenged jurisdictions.

1.  District of Columbia

In full, the District of Columbia's antitrust legislation provides:

It shall be unlawful for any person to monopolize, attempt to monopolize, or combine or conspire with any other person or persons to monopolize any part of trade or commerce, *all or any part of which is within the District of Columbia.*

D.C.Code § 25–4503 (emphasis added).  In *GTE New Media Servs., Inc. v. Ameritech Corp.,* 21 F.Supp.2d 27, 45 (D.D.C.1998), the United States District Court for the District of Columbia applied this statute in the context of addressing the defendants' motion to dismiss the plaintiff's antitrust claims.  Specifically, the plaintiff alleged that the defendants illegally combined to restrain trade and monopolize the Internet Yellow pages market by controlling Internet access points through which competing Internet Yellow Pages providers offered their services.  In this way, users who sought Yellow Pages information were directed by web browsers exclusively to the defendants' companies.  Recognizing that D.C.Code § 25–403 requires the plaintiff to allege a "connection with this jurisdiction," the court found that "the plaintiff ha[d] satisfied this separate requirement by alleging the defendants' anti-competitive activity impacts upon Internet users and businesses purchasing Internet Yellow Pages advertisements in the District of Columbia." *Id.* at 45.

█ Construing the allegations of the Complaint in the light most favorable to Class Plaintiffs and drawing all reasonable inferences in favor of Class Plaintiffs as the Court must on a Motion To Dismiss, the Court concludes that Class Plaintiffs have alleged an impact upon consumers in the District of Columbia through their allegations that the putative class members were injured by Intel's alleged conduct throughout the United States and in the District of Columbia.  Accordingly, at this juncture, the Court will deny Intel's Motion To Dismiss Class Plaintiffs' claims under the antitrust laws of the District of Columbia.

2.  Mississippi

█ Mississippi's antitrust laws prohibit agreements to "restrain trade," "increase

... the price of a commodity," or "hinder competition in the production, importation, ... sale or purchase of a commodity." Miss.Code Ann. § 75–21–1. In *In re New Motor Vehicles Canadian Export Antitrust Litig. ("NMV")*, 350 F.Supp.2d 160, 171 (D.Me.2004), the defendants raised the same argument that Intel raises here, that Mississippi's antitrust laws are limited to intrastate conduct and the plaintiffs' failure to allege state specific activity required dismissal of their complaint. However, the *NMV* court recognized that the Mississippi Supreme Court has characterized sales and distribution within Mississippi as intrastate in character when made " 'after the ... products [have] been received ... in this state and ... incorporated into the general mass of property therein.' " *Id.* (quoting *Standard Oil Co. of Kentucky v. State*, 107 Miss. 377, 65 So. 468, 471 (1914)). In *Standard Oil*, the Mississippi Supreme Court went on to conclude that "to be punishable under state laws, [a conspiracy to monopolize trade] must have as one of its objects a monopoly in the intrastate trade ... to be accomplished in part at least by transactions which are also wholly intrastate." 65 So. at 471. Extrapolating from this line of reasoning, the *NMV* court found it reasonable to infer from the complaint that the defendants wanted Mississippi car dealerships, like the dealerships in all states, to charge Mississippi consumers higher prices as a result of the lack of competition from Canadian imports. The court concluded that some of these sales "would occur wholly within the State of Mississippi, after the vehicle had been incorporated into the general mass of property' in the state, thereby falling within the compass of

the Mississippi antitrust statute." *NMV*, 350 F.Supp.2d at 171. In the Court's view, Class Plaintiffs' Complaint satisfies this requirement.[5] Accordingly, the Court will deny Intel's Motion To Dismiss Class Plaintiffs' claims under Mississippi's antitrust laws.

### 3. Nevada

Nevada's antitrust statute, the Nevada Unfair Trade Practices Act ("NUTPA"), delineates certain anticompetitive conduct and states that it is "unlawful to conduct any part of such activity in this state." Nev.Rev.Stat. § 598A.060. In *NMV*, the court also examined this statute and concluded that it was reasonable to construe the plaintiffs' complaint as alleging a conspiracy among car manufacturers and Nevada dealers which "contemplated vehicle sales in Nevada at higher prices because of the exclusion of Canadian vehicles." 350 F.Supp.2d at 171–172. This approach is also consistent with the approach taken by the United States District Court for the District of Nevada in *Pooler v. R.J. Reynolds Tobacco Co.*, 2001 WL 403167, *2 (Nev.Dist.Ct. Apr. 4, 2001) (concluding that allegations of anticompetitive conduct in domestic and foreign markets included the marketing and sale of tobacco products in Nevada and denying motion to dismiss complaint for failure to allege acts committed in the state which were part of the alleged illegal activity).

■ In this case, the sale of computers containing the x86 microprocessor is at least part of the anticompetitive conduct alleged by Class Plaintiffs, and the Court concludes that it is reasonable to infer

---

**5.** Intel argues that no part of Intel's conduct can be considered "wholly intrastate" in character, because Intel is a component maker and Class Plaintiffs are indirect purchasers of downstream products who are several links down the manufacturing and distribution chain from Intel's alleged conduct. However, the component part argument does not appear to be relevant to the Mississippi Supreme Court's approach to when sales and distributions within the state assume an intrastate character. *Standard Oil*, 65 So. at 471.

from Class Plaintiffs' allegations of indirect purchaser injury throughout the United States that Class Plaintiffs' allegations of anticompetitive conduct by Intel include the sale of the x86 microprocessor in Nevada markets. Accordingly, the Court will deny Defendants' Motion To Dismiss Class Plaintiffs' claims under the NUTPA.

### 4. South Dakota

■ South Dakota's antitrust law provides that "[a] contract, combination or conspiracy between two or more persons in restraint of trade or commerce *any part of which is within this state* is unlawful." S.D. Rev.Code § 37–1–31 (emphasis added). As the court in *NMV* recognized, this statute is ambiguous regarding whether part of the conspiracy or part of the trade or commerce must be within the state. The *NMV* court went on to assume that the State of South Dakota intended its antitrust coverage to be as broad as possible, and therefore, allegations that part of the trade or commerce occurred within South Dakota were sufficient to bring the related conspiracy into the reach of South Dakota law. Intel has not persuaded the Court that this construction of South Dakota law is erroneous, and Class Plaintiffs have, at least by reasonable inference, alleged the sale of computers containing Intel x86 microprocessors in South Dakota. Accordingly, the Court will deny Intel's Motion To Dismiss Class Plaintiffs' claims under South Dakota's antitrust laws.

### 5. West Virginia

■ West Virginia's antitrust statute provides that "[e]very contract, combination in the form of trust or otherwise, or conspiracy in restraint of trade or commerce *in this State* shall be unlawful." W.

Va.Code § 37–18–3 (emphasis added). Further, the portion of the West Virginia Code dealing with monopoly provides that "[t]he establishment, maintenance or use of a monopoly or an attempt to establish a monopoly of trade or commerce, *any part of which is within this State,* by any persons for the purpose of excluding competition or controlling, fixing or maintaining prices is unlawful." W. Va.Code § 37–18–4 (emphasis added). Because Class Plaintiffs have, at least by reasonable inference, alleged the sale of computers containing Intel x86 microprocessors in West Virginia, the Court concludes at this juncture, that Class Plaintiffs' claims under West Virginia law withstand dismissal. Accordingly, the Court will deny Intel's Motion To Dismiss Class Plaintiffs' West Virginia antitrust claims.

### D. *Class Plaintiff's Class Action Claim For Violation Of New York's Antitrust Law*

In their Complaint, Class Plaintiffs allege a claim under New York Gen. Bus. Law § 30 *et seq.* (the "Donnelly Act") for antitrust violations. By its Motion, Intel contends that Class Plaintiff's cannot maintain this claim, because New York's class action statute, CPLR § 901(b) [6], prohibits class actions under statutes like the Donnelly Act that provide for a treble damages remedy, but do not specifically authorize class action recovery.

In response, Class Plaintiffs contend that this Court need not apply CPLR § 901(b), because it is a procedural rule whose application is usurped by Federal Rule of Civil Procedure 23. Because Rule 23 does not prohibit class recovery on treble damages claims, Class Plaintiffs

---

6. CPLR § 901(b) provides:
Unless a statute creating or imposing a penalty, or a minimum measure of recovery specifically authorizes the recovery thereof in a class action, *an* action to recover a penalty, or minimum measure of recovery created or imposed by statute may not be maintained as a class action.

maintain that class certification is not precluded, and therefore, dismissal of their Donnelly Act claim is not warranted.

This Court has previously concluded that Federal Rule of Civil Procedure 23 does not conflict with § 901(b), and that under the principles set forth in *Erie R.R. v. Tompkins,* 304 U.S. 64, 78, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), application of CPLR § 901(b) is appropriate. *United States v. Dentsply Int'l, Inc.,* 2001 WL 624807, *15–16 (D.Del. Mar. 30, 2001) (Robinson, C.J.). The Court finds no reason to depart from the rationale in *Dentsply.*[7]

■ As Class Plaintiffs recognize, if Section 901(b) applies, this Court is bound by the interpretation of New York law provided by the Court of Appeals of New York. *See Gruber v. Owens–Illinois, Inc.,* 899 F.2d 1366, 1369 (3d Cir.1990) ("In interpreting state statutes, decisions of the state's highest court are binding upon us.") In *Sperry v. Crompton,* 8 N.Y.3d 204, 831 N.Y.S.2d 760, 863 N.E.2d 1012, 2007 WL 527726 (2007), the Court of Appeals of New York concluded that a class action for treble damages cannot be maintained under the Donnelly Act. Accordingly, the Court will grant Intel's Motion To Dismiss Class Plaintiffs' antitrust claim for treble damages under the Donnelly Act.

## II. Whether Class Plaintiffs Have Stated A Claim Under State Consumer Protection Statutes

In arguing that Class Plaintiffs' claims under state consumer protection statutes should be dismissed, Intel first reiterates its argument that Class Plaintiffs have not suffered any injury, and therefore, they lack standing to pursue claims under state consumer protection laws. For the reasons discussed in the context of Plaintiffs' antitrust claims, the Court concludes that Intel is not entitled to dismissal on this ground.

Intel's remaining arguments raise two points. First, Intel contends that the consumer protection statutes of Alaska, Georgia, Louisiana and Montana prohibit class actions, and therefore, Class Plaintiffs' claims under these statutes should be dismissed. Intel's second argument is directed to the consumer protection laws of Arkansas, Idaho, Kansas, Maine, New Mexico, New York and Utah. Intel contends that the consumer protection laws of these states prohibit only fraudulent, deceptive or unconscionable conduct, and Class Plaintiffs' allegations are insufficient to meet these pleading requirements. The Court will address each of Intel's arguments in turn.

### A. Class Plaintiffs' Class Action Claims For Violation Of The Consumer Protection Laws of Alaska, Georgia, Louisiana And Montana

Intel contends that Class Plaintiffs' claims under the laws of Alaska, Georgia, Louisiana and Montana for consumer protection violations should be dismissed because each state expressly prohibits class actions. In response, Class Plaintiffs contend that the limits on class actions imposed by these states' laws are procedural rules which directly conflict with Federal Rule of Civil Procedure 23, and therefore, Rule 23 should prevail over the conflicting states' procedural laws.

---

7. Further, a majority of courts have concluded that § 901 is a substantive rule and not a procedural rule. Therefore, under *Erie* principles, § 901 applies in federal court diversity actions. *See Holster v. Gatco, Inc.,* 485 F.Supp.2d 179, 183–86 (E.D.N.Y.2007). For additional discussion of *Erie* principles in the context of Class Plaintiffs' class action consumer protection claims see *infra* Section II of the Discussion portion of this Memorandum Opinion.

As this Court explained in addressing New York's Donnelly Act, state statutes prohibiting class certification do not directly conflict with Rule 23, which governs the manner in which a court should determine if class certification is appropriate. Because no direct conflict exists, the Court must apply *Erie* principles to determine if state law should apply.

■ Under *Erie*, a federal court with diversity jurisdiction must apply state substantive law and federal procedural law. The application of the substantive/procedural dichotomy is applied with an outcome determinative goal so that " 'in all cases where a federal court is exercising jurisdiction solely because of the diversity of citizenship of the parties, the outcome of the litigation in the federal court [will] be substantially the same, so far as legal rules determine the outcome of a litigation, as it would be if tried in a State court.' " *Chamberlain v. Giampapa*, 210 F.3d 154, 158–159 (3d Cir.2000) (quoting *Guaranty Trust Co. v. York*, 326 U.S. 99, 109, 65 S.Ct. 1464, 89 L.Ed. 2079 (1945)). The outcome determinative focus serves the "twin aims" of discouraging forum shopping and avoiding inequitable administration of the laws. *Id.* (citing *Hanna v. Plumer*, 380 U.S. 460, 468, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965)). Thus, application of the outcome determinative test should not favor the use of state law unless one of these aims is furthered. *Id.* As the Supreme Court explained in *Hanna*:

> *Erie* and its progeny make clear that when a federal court sitting in a diversity case is faced with a question of whether or not to apply state law, the importance of a state rule is indeed relevant, but only in the context of asking whether application of the rule would make so important a difference to the character or result of the litigation that failure to enforce it would unfairly discriminate against citizens of the forum State, or whether application of the rule would have so important an effect upon the fortunes of one or both of the litigants that failure to enforce it would be likely to cause a plaintiff to choose the federal court.

380 U.S. at 468, 85 S.Ct. 1136. Even if state law affects the outcome of the litigation, however, it will not be applied if a strong countervailing federal interest dictates recourse to the federal rules, or if the *Erie* rule is used to void a Federal Rule of Civil Procedure. *Giampapa*, 210 F.3d at 159 (citations omitted).

■ In this case, the Court concludes that application of the *Erie* principles favors application of the state laws prohibiting class actions. 19 Charles A. Wright, Arthur R. Miller and Edward H. Cooper, *Federal Practice & Procedure: Jurisdiction 2d* § 4513 at 442 n. 63 (2d ed. 1996) ("[A] specific state policy denying class action enforcement of a particular state-created right should be honored by a federal court."). In the Court's view, a contrary result would alter the character of this litigation and provide a result that is at odds with the result that would be reached by the respective state courts had this action been brought in those jurisdictions. Further, the Court is persuaded that application of the respective state bans on class actions will discourage forum shopping.

Class Plaintiffs direct the Court to three cases taking a contrary approach, *O'Keefe v. Mercedes–Benz USA, LLC*, 214 F.R.D. 266, 285–286 (E.D.Pa.2003); *In re Bridgestone/Firestone Inc. Tires Prods. Liability Litig.*, 205 F.R.D. 503 (S.D.Ind.2001), *rev'd in part on other grounds*, 288 F.3d 1012 (7th Cir.2002); and *Kristiansen v. John Mullins & Sons, Inc.*, 59 F.R.D. 99, 109–110 n. 13 (E.D.N.Y.1973). In these cases, the respective courts found that limitations

on class actions were procedural rules which directly conflicted with Federal Rule of Civil Procedure 23, and therefore, Rule 23 should apply to allow class certification. However, the Court finds these decisions to be distinguishable from the circumstances here. Notably, none of the cases identified by Class Plaintiffs address the laws of the particular states at issue here. In *O'Keefe,* the court determined that an Alabama ban on class actions was a procedural rule; however, it did so in the face of an Alabama Supreme Court case expressly referring to the rule as a procedural rule. By way of further example, *Bridgestone/Firestone* addressed Tennessee law and Michigan law; however, neither of these states banned class actions outright. In fact, the Tennessee law was silent on the questions of class actions and the Michigan law under consideration allowed class actions, but with certain requirements that were additional to those set forth in Rule 23.

In contrast, federal courts considering the laws of the states at issue here have concluded that class actions were precluded in federal courts based on the respective state law bans. *See e.g., In re Pharm. Indus. Average Wholesale Price Litig.,* 230 F.R.D. 61, 84 (D.Mass.2005) (excluding consumers from Alaska, Georgia and Montana from class because consumer protection statutes in those state prohibit class actions); *O'Quin v. Verizon Wireless,* 256 F.Supp.2d 512, 519 (M.D.La.2003) (recognizing Louisiana's ban on class actions and expressing view that plaintiffs "could not get a class certified under that particular law in either state or federal court"). Accordingly, the Court will grant Defendants' Motion To Dismiss Class Plaintiffs' consumer protection claims based on the laws of the States of Alaska, Georgia, Louisiana and Montana.

### B. Whether Class Plaintiffs Have Sufficiently Alleged Deceptive Or Unconscionable Conduct To State Claims Under The Consumer Protection Laws Of Arkansas, Idaho, Kansas, Maine, New Mexico, New York and Utah

Intel contends that Class Plaintiffs' claims under the consumer protection laws of Arkansas, Idaho, Kansas, Maine, New Mexico, New York and Utah should be dismissed, because these laws require fraudulent or deceptive conduct and/or unconscionable trade practices, and Plaintiffs' allegations do not rise to that level. Specifically, Intel contends that Class Plaintiffs' allegations of "fraudulent practices" are conclusory and insufficient to satisfy the fraudulent or deceptive component of these state laws. Intel also contends that, to the extent Class Plaintiffs are alleging unconscionable trade practices, as opposed to and separate from fraudulent practices, Class Plaintiffs fail to state a cause of action. Because Class Plaintiffs are indirect purchasers who had no direct contact with Intel, Intel contends that they cannot allege that Intel took grossly unfair advantage of them. Intel also contends that Class Plaintiffs stood to benefit from the discounts on Intel's microprocessors and that the reduction in the prices of microprocessors cannot be said to be conduct which is an "affront to justice," "conscience-shocking" or "grossly disparate."

In response, Class Plaintiffs contend that the allegations concerning Intel's discriminatory rebates and discounts, its below-cost pricing, its threats toward customers who were considering making deals with AMD, and its retaliation against customers who did make such deals are inherently deceptive and self-concealing actions, of which Class Plaintiffs could not have been aware. Class Plaintiffs also contend that Intel acted fraudulently when it used

compiler programs to secretly degrade computer performance when a program is run on an AMD platform.

■■■ The Court concludes that Class Plaintiffs have sufficiently alleged deceptive or unconscionable trade practices so as to withstand dismissal for purposes of Rule 12(b)(6) under the laws of the States of Arkansas, Idaho, Kansas, Maine, New Mexico, New York and Utah. Intel contends that Class Plaintiffs have failed to allege that any of Intel's alleged conduct was directed towards Class Plaintiffs personally. Instead, Intel contends that all of Class Plaintiffs' allegations are directed toward its actions vis-à-vis AMD and others. In the Court's view, Intel's arguments are in the nature of the causation arguments that it raised in the context of antitrust injury. As the Court noted there, these arguments are fact-driven and better left to a later stage of the proceedings.

At this juncture, the Court concludes that Class Plaintiffs have alleged a scheme involving discriminatory rebates and discounts, threats and intimidation of direct purchasers and retaliation against direct purchasers, all of which ultimately impacted consumers like Class Plaintiffs. Intel contends that Class Plaintiffs acknowledge that some of their alleged conduct resulted in below-cost pricing, and therefore, their conduct cannot be unconscionable. While Class Plaintiffs acknowledge that Intel's conduct may "in some cases" have resulted in belowcost pricing on incremental sales, Class Plaintiffs have also alleged that the suppression of competition that has resulted from Intel's conduct has ultimately led to higher prices for consumers. Specifically, Class Plaintiffs allege:

234. Intel's exclusionary and restrictive practices described herein have suppressed competition in the x86 Microprocessor Market, resulting in higher prices for Intel x86 microprocessors, even after discounts or rebates attributable to microprocessor purchases. The overcharges imposed by Intel have been passed on to Plaintiffs and the Class members in the form of higher prices for personal computers, workstations, and servers containing Intel x86 microprocessors.

Further, the Court concludes that Class Plaintiffs' allegations concerning Intel's use of compiler programs to degrade computer performances of programs run on an AMD platform are in the nature of deceptive trade practices for purposes of the various state statutes. Accordingly, on the face of the Class Complaint at this early stage of the proceedings, the Court cannot conclude that Class Plaintiffs allegations fail, as a matter of law, to state a claim for fraudulent, deceptive or unconscionable trade practices under the various state consumer protection laws. Therefore, the Court will deny Intel's Motion To Dismiss these claims.

C. *Whether Class Plaintiffs Have Sufficiently Pled A Claim Under California's Unfair Competition Law*

Intel separately challenges Class Plaintiffs' ability to state a claim under California's Unfair Competition Law ("UCL"). Intel's argument is based upon its argument that Class Plaintiffs lack standing to assert violations of either the Sherman Act or the Cartwright Act. Because the Court has concluded that a determination of whether Class Plaintiffs have alleged antitrust injury is best left to a later stage of the proceedings, the Court will deny Intel's Motion To Dismiss Class Plaintiffs' claim under the California UCL.

### III. Whether Class Plaintiffs Have Stated Common Law Claims For Monopolization And Unjust Enrichment

#### A. *Monopolization*

Intel contends that Class Plaintiffs cannot state a claim for the tort of monopolization under California's common law. In support of its argument, Intel points out that there are no definitive California Appellate Court or Supreme Court cases recognizing a damages claim based upon the common law tort of actual or attempted monopolization, and therefore, Intel contends that this Court should not "create" such a tort here. In response, Class Plaintiffs direct the Court to several California Superior Court *cases* and *one* California Court of Appeals *case* which Class Plaintiffs contend demonstrate that California recognizes a common law tort of monopolization.

The Court has reviewed the cases cited by the parties and finds that there is no direct precedent from the California Supreme Court or the California Courts of Appeals on the question of whether California recognizes a common law claim for damages based upon monopolization. Class Plaintiffs direct the Court to *In re Cipro Cases I & II*, 121 Cal.App.4th 402, 17 Cal.Rptr.3d 1 (Cal.Ct.App.2004) for the proposition that California courts recognize the common law tort of monopolization. However, in *Cipro*, the Court did not analyze this question specifically and only addressed whether a class alleging a claim for common law monopolization was properly certified. Class Plaintiffs also direct the Court to *Natural Gas Anti–Trust Cases I, II, III and IV*, 2002 WL 31570296 (Cal.Super.Ct. Oct. 16, 2002). In *Natural Gas*, the California Superior Court of San Diego County refused to strike a claim alleging the common law tort of monopolization stating:

Additionally, the monopolization cause of action is not stricken because California courts have recognized that monopolization and attempted monopolization are against public policy and prohibited at common law. *Burdell v. Grandi*, 152 Cal. 376, 92 P. 1022 (1907). California also recognizes the existence of the common law "business tort" of monopolization, separate and apart from statutory claims arising under the Cartright Act. *Exxon Corp. v. Superior Court*, 51 Cal. App.4th 1672, 60 Cal.Rptr.2d 195 (1997).

2002 WL 31570296 at \*3. As Intel points out, however, neither case cited by the *Natural Gas* court actually analyzes whether a monopolization claim is available under California law in the first instance. In *Burdell*, the California Supreme Court found that a restrictive covenant in a lease that was intended to create a monopoly was void, but it did not address the availability of damages for a monopoly claim. Similarly in *Exxon*, the court concluded that the plaintiffs' monopoly claim could not survive summary judgment, but did not actually address whether such a claim was cognizable under California law because no such challenge was made to the claim.

More recently, another California Superior Court, the Superior Court of Santa Clara County, has taken the opposite view of the *Natural Gas* court. In *Branning v. Apple Computer, Inc*, the court concluded that "there is no cause of action for common law monopoly under California law." No. 1–05–CV–045719 at 3 (Cal.Super.Ct. May 9, 2006). In support of its conclusion, the *Branning* court pointed to legislative history concerning the 2002 attempt to amend the Cartwright Act. In arguing that California should adopt a clause similar to Section 2 of the Sherman Act, the Attorney General of the State of California reported to the Senate that "[a]ccording to Attorney General's Office, the remedies for

illegal monopolization are limited under current law to relief in a federal court." Assembly Comm. On Bus. & Profs., 2001–2002 Reg. Session, analysis of Senate Bill 1814, at 3 (June 25, 2002). The *Branning* court went on to cite to *State of California ex rel. Van de Kamp v. Texaco, Inc.*, 46 Cal.3d 1147, 1167, 252 Cal.Rptr. 221, 762 P.2d 385 (1988) and Phillip E. Areeda, *Antitrust Law: An Analysis of Antitrust Principles and their Application*, for the proposition that a civil claim for damages for monopolization was not recognized under the common law. As these sources point out, under the common law, the remedy for illegal agreements resulting in monopolies was the voiding of the offending agreements and not the awarding of civil damages as provided for under statutory law. *See also* Joseph D. Zmore, *Business Torts* Vol. 2, ch. 20 § 20.01 ("The primary difference between common law trade regulation and the Sherman Act is that the Sherman Act penalizes anticompetitive conduct whereas the common law merely held that contracts that unreasonably restrained trade were unenforceable.")

This rationale is in accord with the approach taken by the Court of Appeals for the Ninth Circuit in *Dimidowich v. Bell & Howell*, 803 F.2d 1473, 1478 (9th Cir.1986). Construing California law, the Ninth Circuit recognized that California's Cartwright Act does not contain a provision addressing unilateral conduct that results in a monopoly, but only combinations or conspiracies. As a result, the Ninth Circuit affirmed the district court's dismissal of the plaintiff's monopolization and attempted monopolization claims concluding that the plaintiff's monopoly claims challenging only the unilateral conduct of the defendant "fail[ed] to state a cognizable claim under California law . . ." *Id.*

■ In the absence of California Supreme Court law to the contrary, the Court is persuaded by the rationale of the *Branning* court and finds it to be consistent with the state of the common law as described by leading commentators. Accordingly, the Court concludes that Class Plaintiffs' claim for damages based upon the common law tort of monopolization is not cognizable under California law, and therefore, the Court will dismiss Class Plaintiffs' common law monopolization claim.

## B. *Unjust Enrichment*

In the Complaint, Class Plaintiffs allege that Intel has been unjustly enriched through the overpayments of Class Plaintiffs and the resulting profits such overpayments yielded to Intel. Class Plaintiffs raise this claim under California law on behalf of all Class Members, but alternatively allege that if California law is not applied on a nation-wide basis that this claim is brought under the laws of the individual States and the District of Columbia.

By its Motion, Intel contends that Class Plaintiffs' unjust enrichment claim should be dismissed, because California does not recognize a cause of action for unjust enrichment. Intel also contends that Class Plaintiffs cannot maintain a claim for unjust enrichment under the laws of the individual States because (1) Class Plaintiffs have no antitrust standing and therefore cannot maintain an unjust enrichment claim on the same facts; (2) a successful unjust enrichment claim would expose Intel to the risk of multiple liability, an outcome prohibited by states following the Supreme Court's decision in *Illinois Brick*; and (3) Class Plaintiffs cannot establish a claim for unjust enrichment on the merits.

■ Generally, a claim for unjust enrichment requires a plaintiff to demonstrate that (1) the plaintiff conferred a benefit on the defendant; (2) the defendant knew of the benefit; and (3) the

defendant accepted or retained the benefit under such circumstances as to make non-payment inequitable. Unjust enrichment only applies in circumstances in which the parties have not entered into an express contract. As Section 107(1) of the Restatement (First) of Restitution provides:

> A person of full capacity who, pursuant to a contract with another, has performed services or transferred property to the other or otherwise conferred a benefit upon him, is not entitled to compensation therefor other than in accordance with the terms of such bargain, unless the transaction is rescinded for fraud, mistake, duress, undue influence or illegality, or unless the other has failed to perform his part of the bargain.

In *NMV*, the court recognized this principle and dismissed the unjust enrichment claims of the plaintiffs who claimed that automobile manufacturers and dealers conspired to keep Canadian built cars out of the United States thereby causing overcharges for cars built in the United States that the plaintiffs purchased. 350 F.Supp.2d at 210. The *NMV* court stated that "unjust enrichment ordinarily does not furnish a basis for liability where parties voluntarily have negotiated, entered into and fully performed their bargain, as consumers do in buying vehicles." According to the *NMV* court:

> The automobile purchasers here paid their purchase prices and obtained their vehicles. The Second Amended Complaint does not seek to rescind these sales, and it does not assert that purchasers failed to receive the benefit for which they bargained in buying the vehicles.

*Id.* at 210. The Court concludes that the circumstances in *NMV* are analogous to the circumstances here. The Class Plaintiffs paid the purchase price for their computers and received their computers. Class Plaintiffs have not sought to rescind their purchases, none of which involved Intel as a direct manufacturer or seller, and Class Plaintiffs have not alleged that they did not receive the benefit of their bargain.

Class Plaintiffs direct the Court to a contrary holding in *In re K–Dur Antitrust Litig.*, 338 F.Supp.2d 517 (D.N.J.2004). In *K–Dur*, the court rejected the defendants' argument that " '*any* consideration' given for a benefit conferred necessarily defeats unjust enrichment claims." *Id.* at 545–546 (emphasis added). The court went on to conclude that the determination of the value of the benefit received compared with the amount paid were fact sensitive questions not suitable for adjudication in the context of a motion to dismiss. In this case, Class Plaintiffs do not allege that they failed to receive the benefit of their bargain, and therefore, the Court is not persuaded that *K–Dur* is applicable here. Further, to the extent that *K–Dur* can be read to adopt a general rule contrary to the rule discussed in *NMV*, the Court declines to adopt *K–Dur* and instead concludes that *NMV* and its adherence to the principles outlined in the Restatement (First) of Restitution is the better reasoned approach. Accordingly, the Court will grant Defendants' Motion to the extent it seeks dismissal of Class Plaintiffs' common law unjust enrichment claims.

## CONCLUSION

For the reasons discussed, the Court will grant Intel's Motion To Dismiss the following claims asserted by Class Plaintiffs: (1) claims for antitrust violations under New York law; (2) class action consumer protection claims under the laws of the States of Alaska, Georgia, Louisiana and Montana; (3) claims under the common law for monopoly; and (4) claims under the common law for unjust enrich-

ment. Intel's Motion To Dismiss will be denied in all other respects.

An appropriate Order will be entered.

### ORDER

At Wilmington, this *12* day of July 2007, for the reasons set forth in the Memorandum Opinion this date;

IT IS HEREBY ORDERED that Intel Corporation's Motion To Dismiss The First Amended Consolidated Complaint (D.I. 217 in Civil Action No. 05–485 and D.I. 307 in MDL Docket No. 05–1717) is **GRANTED** with respect to the following claims: (1) claims for antitrust violations under New York law; (2) class action consumer protection claims under the laws of the States of Alaska, Georgia, Louisiana and Montana; (3) claims under the common law for monopoly; and (4) claims under the common law for unjust enrichment, and **DENIED** in all other respects.